16 A.3d 1040

AMIN YOUSEF AND KHWALA YOUSEF, PLAINTIFFS–RESPON-
DENTS, v. GENERAL DYNAMICS CORPORATION AND HERTZ
INC., DEFENDANTS, AND GENERAL DYNAMICS–ORDI-
NANCE AND TACTICAL SYSTEMS, INC., AND DAVID ED-
MONDS, DEFENDANTS–APPELLANTS.

CRANE D. ROBINSON AND JEANNIE ROBINSON, PLAINTIFFS, v.
GENERAL DYNAMICS CORPORATION, HERTZ CAR RENT-
ALS, HERTZ INTERNATIONAL, AND GEICO INSURANCE
COMPANY, DEFENDANTS, AND GENERAL DYNAMICS–ORDI-
NANCE AND TACTICAL SYSTEMS, INC., AND DAVID ED-
MONDS, DEFENDANTS.

Argued October 26, 2010—Decided April 11, 2011.

544

546

*Kenneth M. Labbate,* a member of the New York bar, argued the cause for appellants (*Mound Cotton Wollan & Greengrass,* attorneys; *Mr. Labbate, Jeffrey S. Weinstein* and *Steven A. Torrini,* on the briefs).

*Donald P. Jacobs* argued the cause for respondents (*Budd Larner and Jaloudi & Forsa,* attorneys; *Mr. Jacobs* and *Nicholas V. Forsa,* of counsel and on the briefs).

*Richard H. Steen*, President, submitted a brief on behalf of amicus curiae New Jersey State Bar Association (*Mr. Steen*, attorney; *Mr. Steen* and *Amirali Y. Haidri*, on the brief).

Justice ALBIN delivered the opinion of the Court.

The issue before us is whether a New Jersey court is the proper forum for a personal-injury lawsuit involving an automobile accident that occurred in the Republic of South Africa. At all relevant times in this lawsuit, plaintiffs resided and worked in New Jersey, and the corporate defendant was doing business in New Jersey with plaintiffs' employer. On a business trip to South Africa, the corporate defendant's employee—also a defendant and a resident of Florida—was driving a van carrying the two plaintiffs. He allegedly ran a stop sign, causing a collision in which plaintiffs suffered serious bodily injuries. All the known eyewitnesses to the accident reside in the United States.

Defendants sought to dismiss the negligence action brought by plaintiffs in this State on grounds of *forum non conveniens*. Under the doctrine of *forum non conveniens*, a court using its equitable power can decline to exercise jurisdiction over a defendant if that defendant can demonstrate that the plaintiff's choice of forum is "demonstrably inappropriate." *Kurzke v. Nissan Motor Corp. in U.S.A.*, 164 *N.J.* 159, 171–72, 752 *A.2d* 708 (2000). The trial court in this case found that defendants did not satisfy their burden of showing that New Jersey was an inappropriate forum in which to litigate this negligence action. The Appellate Division affirmed.

We conclude that the trial court properly weighed the public-interest and private-interest factors in finding that New Jersey is not a "demonstrably inappropriate" forum and therefore did not abuse its discretion in denying the *forum non conveniens* motion. *See id.* at 165–66, 752 *A.2d* 708. Because *forum non conveniens* is an equitable doctrine, to lessen the disadvantages of not allowing this case to go forward in South Africa, the trial court has

equitable powers at its disposal to ensure that defendants receive a fair trial in New Jersey.

## I.

### Background Facts

In 2006, plaintiffs Amin Yousef and Crane Robinson lived in New Jersey and were civilian employees of the United States Army in its Armament Research, Development and Engineering Center (Armament Research Center) at the Picatinny Arsenal. One of their colleagues at the Armament Research Center was Lawrence Raniere. In September 2006, all three were working on a project with General Dynamics–Ordnance and Tactical Systems, Inc. (General Dynamics–Ordnance), a United States government contractor doing business in New Jersey.

That same month, Yousef, Robinson, Raniere, and representatives of General Dynamics–Ordnance met in South Africa. The purpose of their trip was to test and procure certain munitions of the Denel Corporation located in Potchefstroom, a town about seventy-five miles from Johannesburg. One member of the General Dynamics–Ordnance team was defendant David Edmonds.

During the trip, Edmonds rented a Volkswagen van from Alisa Car Rentals Ltd., a South African corporation. On September 16, at approximately 6:00 p.m., Edmonds was driving Raniere, Yousef, and Robinson back to their hotel in the van. Raniere occupied the front-passenger seat, Yousef and Robinson the rear seats. While traveling on a road with a posted speed limit of sixty miles per hour, Edmonds apparently did not see a stop sign and other signs leading into an intersection. As the van crossed the intersection without slowing down, it was broadsided by a Corolla traveling at a high speed on a perpendicular road that was not controlled by a stop or yield sign. The impact caused the van to flip over and skid on its side for approximately one hundred feet until it came to a rest. Yousef was thrown from the van on impact and suffered devastating head injuries. Robinson, who remained in the van,

was injured to a lesser extent. Both Edmonds and Raniere were wearing seatbelts and walked from the crash without any serious injuries.

The police did not come to the accident scene that day. Although the driver of the Corolla stopped after the collision, it appears that no one recorded his name or address, and therefore his identity remains a mystery. An ambulance arrived and took Yousef and Robinson to a local hospital. Yousef received medical care in South Africa through the latter part of October 2006. He was then transported to New Jersey where he received treatment for a serious brain injury that required him to use a wheelchair. Robinson underwent surgery at the South African hospital to remove glass embedded in his left arm and returned to the United States for treatment of a spinal injury to his neck and nerve damage to his left leg.

### The Complaint

In September 2007, plaintiffs Yousef and Robinson filed separate personal-injury complaints in the Superior Court, Law Division, Bergen County, alleging that defendant Edmonds, an agent of defendant General Dynamics–Ordnance, operated the van negligently by failing to heed the stop sign, thereby causing the intersection collision. As a result of the accident, both claim they have suffered serious bodily injuries and seek compensatory damages. In addition, plaintiffs' wives filed loss-of-consortium claims.[1]

Both plaintiffs are residents of New Jersey, Yousef living in Budd Lake and Robinson living in Oxford. Their place of work was the Armament Research Center at the Picatinny Arsenal in New Jersey; their employer was the United States Army. Edmonds is domiciled in Florida. He was working with General

---

[1] Plaintiffs also named as defendants: General Dynamics, the parent corporation of General Dynamics–Ordnance, and Hertz Corp. (Yousef's complaint); and Hertz Car Rentals, Hertz International, and Geico Insurance Co. (Robinson's complaint). At various stages, each of those defendants was dismissed from the case; none are part of this appeal.

Dynamics–Ordnance, which was doing business in this State with the Army on a project that brought both plaintiffs and defendants to South Africa. General Dynamics–Ordnance is incorporated in Virginia with its principal place of business in Florida.

### Pretrial Discovery

In February 2009, defendants moved to dismiss the action on grounds of *forum non conveniens,* essentially arguing that a South African court was the more appropriate forum for deciding the issues to be resolved in this case.[2] The parties sharply dispute the "facts" that were adduced in discovery. To provide context to the *forum non conveniens* motion, a review of the discovery is necessary.

Raniere, the front-seat passenger in the van, prepared an accident report for the South African authorities twelve days after the collision. In that report, he noted that "our road had a stop sign in the direction we were traveling which was missed by our driver [Edmonds]." A day after the accident, persons from the Denel Corporation, who presumably were familiar with the intersection, told Raniere the following: Edmonds and the van's occupants had missed a warning that there was a stop sign "500m up ahead"; "[t]here was also painted on the road the words 'Stop Sign Ahead' in big white letters"; and "there were some bumps in the road to warn [them] of the impending intersection." On the other hand, Raniere noted that the stop sign "was not very large, and it appeared to be bent over slightly, making it hard to see," that "there were a variety of other signs partially obscuring [it]," and that there were no street lights illuminating the intersection as they approached.

Defendants presented two affidavits from Anton Niemann, a local South African tow-truck operator familiar with the intersection where the crash occurred. On the day of the accident,

---

2 In December 2007, defendants had removed the two cases to the United States District Court for the District of New Jersey. In November 2008, the district court remanded the cases to the Superior Court. The reasons for the removal and remand are not germane to this appeal.

Niemann recalled driving on the same road traveled by the van and observing "that the stop sign at the intersection was bent or tilted in such a manner that a driver unfamiliar with the road conditions and traffic signage in the immediate vicinity would not have noticed [it]." He also averred that, from 1998 to 2008, three to four motor-vehicle accidents occurred every month at that intersection.

By the time of discovery, the intersection had been converted into a four-way stop. Photographs pre-dating the changes made to that part of the roadway were produced in discovery. Those photographs show a sign warning of a stop at the approaching intersection.

The parties dispute whether the vehicle was equipped with rear-passenger seatbelts and, if so, whether Yousef and Robinson were in fact wearing their seatbelts. Defendants introduced an owner's manual to the van that references the presence of rear seatbelts and point to Raniere's accident-report statement that "[s]ubsequent conversations revealed that neither [Yousef] nor [Robinson] had had their seatbelts fastened." [3] In contrast, Robinson in his interrogatory answers stated that he was "sure that the [rear] seat he was sitting in did not contain a seat belt." The van was sold to a South African resident in November 2006, and the vehicle has not been inspected since that date. Indeed, there is no report either from the local South African police authorities or from the South African insurance-claims bureau that inspected the vehicle about the presence or absence of rear seatbelts.

*South African Law*

The parties also presented affidavits from South African attorneys who outlined the principles of South African law that would apply if the case were tried in South Africa.[4] Under South

---

[3] Although Raniere was deposed, his testimony is not part of the record. No one challenges that Raniere authenticated his report at his deposition.

[4] Our discussion of South African law is based solely on the representations made by the parties' South African lawyers.

African law, a judge, not a jury, would decide whether defendants were negligent and, if so, the quantum of damages. In an accident, such as the one here, where a plaintiff/passenger of a vehicle is injured as a result of the alleged negligence of that vehicle's driver, the plaintiff can proceed against South Africa's Road Accident Fund [5] for the first $3000 of damages and pursue a common-law action against the defendant/driver for the remaining damages. If the plaintiff chooses not to proceed against the Fund and only pursues a common-law action, the first $3000 of damages cannot be collected against the defendant.

In theory there is no artificial limit on the quantum of an award that can be returned in favor of a personal-injury plaintiff, but in reality compensatory-damage awards in South Africa are far less generous than those in New Jersey. Additionally, under South African law, consortium and punitive-damage claims are not allowed in a personal-injury negligence case. Typically, liability and damage claims are tried separately, but South African courts will entertain requests for a joint trial of those issues. The parties dispute when the case would be tried if South Africa were the forum, with dates ranging from two to six years depending on whether the liability and damage claims are tried together. Moreover, unlike *N.J.R.E.* 407, under South African law, subsequent remedial measures by a party may be admissible to show that a party was negligent on a prior occasion.[6]

South Africa has opted out of Article 23 of the Hague Convention that would have required it to honor "Letters of Request issued for the purpose of obtaining pre-trial discovery of docu-

---

[5] The Road Accident Fund was established by South Africa's Road Accident Fund Act 56 of 1996. Amendments to the Act that went into effect in 2008 apparently would not apply to this case.

[6] *N.J.R.E.* 407 in relevant part provides: "Evidence of remedial measures taken after an event is not admissible to prove that the event was caused by negligence or culpable conduct." Thus, in New Jersey, evidence that the municipality has since erected stops signs in all directions is not admissible to show the municipality was negligent or culpable on the day of the accident.

ments as known in Common Law countries." [7] Nevertheless, under its own law, South Africa may honor letters of request for the production of evidence by any foreign jurisdiction.[8]

### Trial Court

The trial court denied the motion of defendants Edmonds and General Dynamics–Ordnance to dismiss the negligence action on the basis of *forum non conveniens*.[9] The court found that South Africa provided an "adequate alternative forum" despite the different damage remedies available in New Jersey, but also recognized that a plaintiff's choice of forum is entitled to a great degree of deference. In deciding that New Jersey was an appropriate forum, the court weighed the private- and public-interest factors outlined by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 *U.S.* 501, 508–09, 67 *S.Ct.* 839, 843, 91 *L.Ed.* 1055, 1062–63 (1947)—an analysis adopted by this Court in *Gore v. U.S. Steel Corp.*, 15 *N.J.* 301, 306–07, 311, 104 *A.*2d 670 (1954).

The court noted that the balancing of private-interest factors was "extremely close." In New Jersey, defendants would not be able to pursue a contribution or indemnification claim against the South African municipality or other driver involved in the accident and would have difficulty obtaining evidence in that country. In South Africa, plaintiffs would face not only the added expense of litigation in a foreign country, but also a "significant delay" in bringing the case to closure. In the court's mind, the deference favoring plaintiffs' choice of forum made the difference.

---

[7] *Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters* art. 23, Mar. 18, 1970, *T.I.A.S.* No. 7444, 8 *I.L.M.* 37 (1969).

[8] Section 33 of South Africa's Supreme Court Act of 1959 outlines the procedures available to foreign litigants seeking discovery from South Africa. Access to compelled discovery is subject to the discretion of the Minister of Justice and Constitutional Development.

[9] Hertz Corp., which joined in this unsuccessful motion, later was granted summary judgment and dismissed from the case.

In balancing the public-interest factors, New Jersey's interest in providing a forum in this State to its residents outweighed South Africa's interest in regulating its roadways. Last, the court determined that New Jersey's law of damages would govern the case "considering the underlying conduct, residence and domicile of the parties and the fact that the parties' relationship is centered in New Jersey not South Africa."

Defendants moved for leave to appeal.

## II.

### Appellate Division

The Appellate Division denied that motion. We granted defendants' interlocutory appeal and summarily remanded to the Appellate Division for consideration of the merits. *Yousef v. Gen. Dynamics Corp.*, 200 *N.J.* 363, 981 *A.*2d 1276 (2009). In an unpublished opinion, the appellate panel affirmed the trial court's order denying defendants' motion to dismiss on *forum non conveniens* grounds.

The panel observed that a motion to dismiss on the basis of *forum non conveniens* should not be granted unless the plaintiffs' "choice of forum is 'demonstrably inappropriate.'" (quoting *D'Agostino v. Johnson & Johnson, Inc.*, 225 *N.J.Super.* 250, 262, 542 *A.*2d 44 (App.Div.1988), *aff'd*, 115 *N.J.* 491, 559 *A.*2d 420 (1989)). Like the trial court, the panel applied the *Gulf Oil* paradigm of weighing the private- and public-interest factors.

The panel agreed with the trial court that a balancing of the private-interest factors was "extremely close." Offsetting defendants' inability to implead the South African municipality in a New Jersey court, the panel believed, was defendants' ability to present evidence about the intersection before and after the accident buttressed by photographs and videotape of the scene. Moreover, the panel noted that because the intersection where the accident occurred has been reconfigured, the factfinder would gain no advantage by viewing the present scene. The panel found that

the difficulties that the South African and American treating physicians would have traveling abroad would be equally burdensome.

In considering the public-interest factors, the panel rejected the argument that this personal-injury lawsuit is "purely a matter of South African interest." The panel observed that New Jersey has an interest in providing a forum for its residents who are injured by the negligence of a Florida resident employed by an American corporation doing business in this State, particularly when all of the parties are domiciled in the United States. Moreover, in light of the redesign of the intersection at issue, the panel was not persuaded that a lawsuit in South Africa was likely to further that country's interests.

In short, the panel determined that the burdens faced by defendants litigating this negligence action in New Jersey are no more onerous than those plaintiffs would face if they were compelled to pursue their claims in South Africa. Defendants' motion for relief was therefore denied.

We granted defendants' motion for leave to appeal. *Yousef v. Gen. Dynamics Corp.*, 202 *N.J.* 41, 994 *A.*2d 525 (2010). We also granted the New Jersey State Bar Association's motion to participate as amicus curiae.

### III.

Defendants maintain that South Africa is the more appropriate forum—that a South African automobile accident case, even one involving United States residents, should not be tried in the Bergen County, Superior Court, Law Division. Defendants' motion to dismiss plaintiffs' personal-injury action is based on the doctrine of *forum non conveniens*. Before probing the details of defendants' arguments, our analysis begins with a review of our jurisprudence governing that doctrine.

## Forum Non Conveniens

The equitable doctrine of *forum non conveniens* empowers a court to decline to exercise jurisdiction when a trial in another available jurisdiction "will best serve the convenience of the parties and the ends of justice." *Gore, supra,* 15 *N.J.* at 305, 104 *A.*2d 670. Ordinarily, a plaintiff's choice of forum will be honored by a court that has jurisdiction over a case. *Kurzke, supra,* 164 *N.J.* at 170, 752 *A.*2d 708. Indeed, "there is a strong presumption in favor of retaining jurisdiction where the plaintiff is a resident who has chosen his [or her] home forum." *Id.* at 171, 752 *A.*2d 708 (quoting *D'Agostino, supra,* 225 *N.J.Super.* at 262, 542 *A.*2d 44); *see ibid.* ("New Jersey courts should be especially accommodating to their own citizens seeking justice at home."). However, a plaintiff's choice of forum is not dispositive, *Piper Aircraft Co. v. Reyno,* 454 *U.S.* 235, 255, 102 *S.Ct.* 252, 265–66, 70 *L.Ed.*2d 419, 435 (1981), because ultimately it is for the court to decide whether the ends of justice will be furthered by trying a case in one forum or another, *see Kurzke, supra,* 164 *N.J.* at 164–65, 752 *A.*2d 708. Nevertheless, a court should not dismiss a case on the ground of *forum non conveniens* unless the choice of forum is "demonstrably inappropriate." *Id.* at 171–72, 752 *A.*2d 708.

The application of this equitable doctrine is left to the sound discretion of the trial court, *id.* at 165, 752 *A.*2d 708, and therefore considerable deference must be paid to the court's decision, *Piper Aircraft, supra,* 454 *U.S.* at 257, 102 *S.Ct.* at 266, 70 *L.Ed.*2d at 436. But there are clearly defined guidelines that channel the discretion of our courts.

First, as already noted, the plaintiff's choice of forum is entitled to preferential consideration by the court. *Id.* at 255 n. 23, 102 *S.Ct.* at 266 n. 23, 70 *L.Ed.*2d at 435 n. 23. Second, any alternative forum must be adequate, and the defendant must be "amenable to process" in that forum. *Wangler v. Harvey,* 41 *N.J.* 277, 286, 196 *A.*2d 513 (1963). An alternative forum will be deemed inadequate if "the remedy offered by the other forum is clearly unsatisfactory." *Piper Aircraft, supra,* 454 *U.S.* at 254 n.

22, 102 *S.Ct.* at 265 n. 22, 70 *L.Ed.*2d at 435 n. 22. Third, we have adopted the analytical framework set forth in *Gulf Oil, supra,* 330 *U.S.* at 508–09, 67 *S.Ct.* at 843, 91 *L.Ed.* at 1062–63, in determining whether the plaintiff's choice of forum is "demonstrably inappropriate" and whether an adequate alternative forum is available. *See, e.g., Kurzke, supra,* 164 *N.J.* at 164, 171–72, 752 *A.2d* 708. *Gulf Oil* enunciated certain private-interest and public-interest factors to be considered in deciding a *forum non conveniens* motion. *Gulf Oil, supra,* 330 *U.S.* at 508–09, 67 *S.Ct.* at 843, 91 *L.Ed.* at 1062–63.

The private-interest factors include "the relative ease of access to sources of proof"; the "availability of compulsory process"; the cost of obtaining the attendance of witnesses; the ability to view an accident scene, if that would be beneficial to the factfinder; the enforceability of a judgment; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." *See id.* at 508, 67 *S.Ct.* at 843, 91 *L.Ed.* at 1062. The public-interest factors include consideration of trial delays that may occur because of backlogs in a jurisdiction; whether jurors should be compelled to hear a case that has no or little relationship to their community; the benefit to a community of "having localized controversies decided at home"; and whether the law governing the case will be the law of the forum where the case is tried. *See id.* at 508–09, 67 *S.Ct.* at 843, 91 *L.Ed.* at 1062–63.

The value ascribed to any particular factor may vary depending on the circumstances of each case. The objective is to "weigh relative advantages and obstacles to [a] fair trial." *Id.* at 508, 67 *S.Ct.* at 843, 91 *L.Ed.* at 1062. A plaintiff's choice of forum "may not be defeated upon a mere balance of conveniences." *Kurzke, supra,* 164 *N.J.* at 170, 752 *A.2d* 708 (quotation omitted). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil, supra,* 330 *U.S.* at 508, 67 *S.Ct.* at 843, 91 *L.Ed.* at 1062; *see also Gantes v. Kason Corp.,* 145 *N.J.* 478, 499, 679 *A.2d* 106 (1996) ("[D]ismissal pursuant to the doctrine of *forum non conveniens*

cannot occur if the transfer will result in significant hardship to the plaintiffs." (citation omitted)). The defendant bears the burden of establishing that the plaintiff's choice of forum is "demonstrably inappropriate." *Varo v. Owens–Illinois, Inc.*, 400 *N.J.Super.* 508, 519–20, 948 *A.*2d 673 (App.Div.2008) (citing *Camden Iron & Metal, Inc. v. Klehr, Harrison, Harvey, Branzberg & Ellers, L.L.P.*, 384 *N.J.Super.* 172, 180, 894 *A.*2d 94 (App.Div.), *certif. denied*, 187 *N.J.* 83, 899 *A.*2d 305 (2006)).

We now apply these legal principles to the facts before us.

## IV.

### Adequacy of Alternative Forum

For purposes of our discussion, we will assume that South Africa presents an adequate alternative forum. South Africa is not disqualified as an alternative forum merely because it does not allow for jury trials in automobile-negligence cases or for punitive-damage or consortium claims. *See Piper Aircraft, supra*, 454 *U.S.* at 247, 102 *S.Ct.* at 261, 70 *L.Ed.*2d at 430; *see also D'Agostino, supra*, 115 *N.J.* at 496, 559 *A.*2d 420 ("[I]t would be inappropriate for the *forum non conveniens* issue ... to be resolved on the basis that New Jersey substantive law is supportive of plaintiff's claims for relief."). Nor is South Africa an inadequate forum because New Jersey damage awards may be more generous for the type of injuries suffered by plaintiffs. *Cf. Piper Aircraft, supra*, 454 *U.S.* at 247, 102 *S.Ct.* at 261, 70 *L.Ed.*2d at 430. Indeed, both the trial court and Appellate Division—despite denying defendants' *forum non conveniens* motion—concluded that South Africa is an adequate alternative forum.

In the end, we need not determine whether South Africa is an adequate alternative forum to resolve the *forum non conveniens* issue. The resolution of that issue ultimately turns on our analysis of the *Gulf Oil* private- and public-interest factors.

### Private–Interest Factors

 Looking at the private-interest factors, particularly "the relative ease of access to sources of proof," *Gulf Oil, supra,* 330 *U.S.* at 508, 67 *S.Ct.* at 843, 91 *L.Ed.* at 1062, defendants argue that much of the relevant evidence is located in South Africa: the accident scene, the van involved in the accident and its current owner, those with knowledge of the intersection in question, medical professionals who treated both plaintiffs Yousef and Robinson, and documents on file with the local police. Those facts tend to favor South Africa as the appropriate forum.

 However, the intersection where the accident occurred has been reconfigured since 2006; therefore an inspection of the scene would likely yield little benefit to the factfinder. No one has suggested that, if the case were tried in New Jersey, there would be a barrier to the admission of photographs and diagrams of the intersection during the relevant time period. The occupants of the van, all of whom live in the United States, should have some knowledge of the intersection as it appeared on the day in question. Moreover, defendants have not established that South Africans with knowledge of the intersection—such as members of the Denel Corporation whom the parties were jointly visiting— would not be willing to give *de bene esse* depositions [10] about their knowledge of the intersection. Indeed, in his report prepared for the local police, Raniere, who was a member of the Army/General Dynamics–Ordnance team in South Africa and an occupant of the van, stated that he was told by Denel Corporation personnel about

---

[10] A *de bene esse* deposition is "one that is taken provisionally for use if the witness is unavailable at the time of trial." *Graham v. Gielchinsky,* 126 *N.J.* 361, 371, 599 *A.2d* 149 (1991) (citation omitted). Needless to say, witnesses who reside in a foreign jurisdiction where they are not subject to the process of this State are "unavailable." *See N.J.R.E.* 804(a)(4) (defining "unavailable" witness as one who "is absent from the hearing ... and the proponent of the statement is unable by process ... to procure the declarant's attendance"). New Jersey's court rules permit the use of videotaped depositions, *R.* 4:14–9, and specifically permit the use of videotaped depositions of "treating physician[s] or expert[s]," regardless of the medical expert's availability, *R.* 4:14–9(e).

stop signs and speed bumps leading to the intersection where the crash occurred.

Despite South Africa's opting out of Article 23 of the Hague Convention, South Africa, through its own laws, may honor requests for the production of evidence from other jurisdictions. *See Chrysler Int'l Corp. v. Chemaly,* 280 *F.*3d 1358, 1360 (11th Cir.2002) (noting that deposition had been secured by court's letter of request to South African authorities). Certainly, without the need for compulsory process, defendants were able to obtain police reports, affidavits from a tow-truck operator, and photographs of the damaged van, indicating an ability to acquire evidence through diligent efforts.

Defendants intend to proffer a seatbelt-contributory-negligence defense. Concerning whether there were seatbelts in the rear of the van, defendants have the statements or testimony of the parties and the van's owner's manual. We know that the van was sold to a named South African resident, but defendants—who retained local counsel—apparently have never located the vehicle. The current condition of that vehicle—if it still exists—will be no different whether this case is tried in New Jersey or South Africa. And whether the van was sold for scrap or whether its interior was altered is also unknown nearly six years after the accident.

The treatment plaintiffs received by medical professionals in South Africa is but a small fraction of the treatment they received in the New Jersey metropolitan area. Plaintiff Yousef has filed certifications from six separate physicians, who have treated him for traumatic brain injury and its sequelae. As a result of his injuries, Yousef has undergone years of treatment in the United States. His deficits are severe and profound, including decreased vision, speech and cognitive impairment, and lack of mobility. Yousef's physicians have averred that their patient is not capable of a trip—much less an extended one—to South Africa, and all of the physicians have indicated that they would be unavailable to attend a trial in South Africa. No one has suggested that Yousef's medical records from his approximately one-month stay in South

African medical facilities would not be available, and clearly any expert physician retained by defendants to examine Yousef would have to do so in the United States.

It is clear that much relevant evidence is present in the United States. For example, all the parties and Raniere (the only known eyewitnesses to the accident) reside in this country, and most of the medical evidence is here. Moreover, it seems likely that evidence in South Africa can be secured for presentation in a New Jersey courtroom. Thus, the access-to-evidence factor does not clearly weigh in defendants' favor.

Because much of the relevant evidence is in the United States, and because there are means for procuring evidence located in South Africa, the lack of compulsory process to compel the attendance of witnesses and production of evidence from South Africa does not necessarily weigh in defendants' favor. Additionally, the record does not suggest that the cost of trying this case in New Jersey would be any greater than in South Africa.

Nevertheless, we acknowledge—as did the Appellate Division and the trial court—that the weighing of the private-interest factors presents a close case. A formidable obstacle for the defense is its inability to implead the South African municipality in a New Jersey civil action. However, as we later discuss, there are equitable remedies available—the resort to comparative-negligence principles—to ensure that defendants will not be liable for damages that the municipality would otherwise be responsible to pay.

We find that the private-interest factors are at best in equipoise between the parties.

We now move on to the public-interest factors.

### Public–Interest Factors

Defendants contend that South Africa has the greater interest in this case primarily for two reasons: (1) South Africa has a vital stake in ensuring that individuals who drive on its roadways observe the appropriate standard of due care; and (2) South

Africa has an interest in ensuring that its local municipalities protect motorists by adequately designing and maintaining road-ways. Concerning the first point, the parties to this case—all of whom live in the United States—were transient visitors to South Africa. Assuming that Edmonds in fact was negligent in obeying the rules of the road in South Africa, it would seem to make little difference if he were found liable in New Jersey as opposed to South Africa. No one suggests that the standard of due care is different in either jurisdiction. The obligation to drive safely in South Africa can be vindicated in New Jersey.

With regard to the second point, the present litigation—even if the local municipality were impleaded—would seem to have little effect on the future design of the intersection where the accident occurred. That intersection was reconfigured some time after the accident and now is a four-way stop. Based on the record before us, we do not know to what degree, if any, the municipality would be responsible for the payment of compensatory damages even if the intersection had been negligently designed.

The parties have different views about supposed administrative delays due to court-calendar congestion in South Africa. However, we do not find that a trial in South Africa would be any less expeditious than in New Jersey. We assume that timely justice can be achieved in either jurisdiction.

A public-interest factor favoring plaintiffs is New Jersey's strong public policy of providing a forum for the redress of wrongs committed against its residents. Although the accident occurred in South Africa, the parties have ties to New Jersey. General Dynamics–Ordnance was doing business in New Jersey with the Army's Armament Research Center at the Picatinny Arsenal. A team from the Army, including Yousef and Robinson, as well as Raniere, and a team from General Dynamics–Ordnance, including Edmonds, met in South Africa for a munitions project with the Denel Corporation. This case concerns injuries caused to New Jersey residents by a corporate entity doing business in this State—even if the alleged negligent act occurred outside this

country. New Jersey's interests are direct and concrete, not remote. Moreover, a New Jersey jury is not ill-suited to hear a case between residents of this State and a company doing business here.

### Thomson and Kurzke

The present case is significantly distinguishable from *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 *F.*3d 357 (6th Cir.2008), on which defendants heavily rely. In that case, while visiting South Africa, a mother and daughter, two Ohio residents, were passengers in a Toyota Condor rented from Thrifty Rent–A–Car Systems, Inc. in South Africa. *Id.* at 360. The Toyota was involved in a motor-vehicle accident when the vehicle's brakes allegedly malfunctioned. *Ibid.* As a result of the accident caused by the allegedly defective brakes, the mother died and the daughter was seriously injured. *Ibid.* The mother's estate and the daughter brought a product-liability action against Toyota and Thrifty in the District Court for the Northern District of Ohio. *Ibid.* The district court dismissed the case against Toyota for lack of personal jurisdiction and the case against Thrifty on grounds of *forum non conveniens.* *Ibid.* The United States Court of Appeals for the Sixth Circuit affirmed. *Ibid.*

In *Thomson,* the case was mostly about the product—a car "designed in Japan and *manufactured, marketed, sold, and rented in South Africa." Id.* at 366 (emphasis added). "[T]he car was manufactured to the requirements of vehicles operated in South Africa.... " *Ibid.* With the exception of the occupants of the vehicle, most of the evidence—particularly the car, which was the object of the litigation—was located in South Africa.[11] *Ibid.* Indeed, the district court found that if the case were tried in the United States, "South African citizens would be deprived of hearing a case regarding the safety of a vehicle marketed, sold, and used in their country." *Ibid.* The Sixth Circuit held—paying

---

[11] There were four occupants in the car, all related to one another. *Id.* at 360.

deference to the district court's decision—that the *Gulf Oil* pri-
vate- and public-interest factors "clearly point[ed] in favor of
adjudication of [the] case in South Africa," and that South Africa
had the "greater overall interest in the outcome of [the] litigation."
*Ibid.*

Unlike *Thomson*, this personal-injury negligence action involves
parties all of whom are domiciled in the United States. The
present case hinges to a large degree on their recollections as well
as Raniere, another resident of this country. In addition, there is
an enormous amount of medical testimony and evidence in New
Jersey and its environs that must be presented at trial. Also
important is that evidence already has been procured from South
Africa. Unlike *Thomson*, here a trial in South Africa appears to
be at least as burdensome—if not more burdensome—than one in
the United States. Last, defendants here—unlike the defendant
in *Thomson*—are attempting to upend the sound discretion invest-
ed in the trial court.

Defendants' reliance on our decision in *Kurzke* is also unavail-
ing. In *Kurzke*, we declined to dismiss on grounds of *forum non
conveniens* a product-liability and breach-of-warranty action
against the defendant automobile manufacturer and dealership.
164 *N.J.* at 162, 752 *A.*2d 708.

In that case, Hartmut Kurzke, a New Jersey resident, pur-
chased a Nissan Quest from a dealership in North Plainfield. *Id.*
at 162–63, 752 *A.*2d 708. Later, Kurzke accepted his employer's
offer to transfer to Germany, and the Quest was shipped to that
country. *Id.* at 163, 752 *A.*2d 708. Three years after the sale,
Kurzke was driving the Quest on the Autobahn in Germany, with
his wife and four-year-old son, when it was hit by another vehicle.
*Ibid.* Kurzke was crushed to death when the Quest's steering
column, which was allegedly defectively designed, failed to col-
lapse. *Ibid.* His wife and child escaped serious injury. *Ibid.*

The Appellate Division affirmed the trial court's dismissal of the
product-liability and breach-of-warranty action on grounds of *fo-
rum non conveniens. Id.* at 164, 752 *A.*2d 708. We reversed. *Id.*

at 172, 752 *A.*2d 708. We emphasized that the Quest was purchased in New Jersey from a New Jersey corporation; that both the vehicle and its "steering column were designed and manufactured in the United States"; that Kurzke received assurances from the New Jersey salesperson—confirmed in a Nissan advertisement—that the Quest had an " '[e]nergy-absorbing steering column [which] collapses upon impact to help reduce the risk of injury' "; and that Kurzke maintained his residence in New Jersey despite his temporary posting in Germany. *Id.* at 162–63, 752 *A.*2d 708. We not only found that "most of the acts that form[ed] the basis of [the] plaintiffs' claims occurred in this country," but also that New Jersey had a "vital interest in assuring the safety of automobiles bought and sold here." *Id.* at 169, 752 *A.*2d 708.

Nevertheless, we remanded for further consideration because there was not sufficient "pre-discovery" at the point the trial court granted the motion. *Id.* at 172, 752 *A.*2d 708. We cautioned, however, that "[w]hen an alternative forum would present as many obstacles as does the forum chosen by the plaintiffs, which appears to be true in this case, a dismissal should not be granted." *Id.* at 171, 752 *A.*2d 708 (citation omitted). We ended by reminding the trial court that "in the final analysis, to dismiss on the basis of *forum non conveniens,* the choice of forum must be 'demonstrably inappropriate.' " *Id.* at 171–72, 752 *A.*2d 708 (citation omitted).

Defendants have fastened onto language in *Kurzke* in which we left "open the possibility that, in a limited number of cases, the burden to a defendant will be so grossly unfair and obvious on the face of the pleadings that discovery will not be necessary to validate a motion for *forum non conveniens.*" *Id.* at 168, 752 *A.*2d 708. Yet, we did not find *Kurzke* to fall in that "limited number," *ibid.,* and, in any event, the *forum non conveniens* motion in the present case was denied after the taking of discovery. Defendants have not argued that they had insufficient time to engage in discovery before the motion was heard.

Contrary to defendants' arguments, we believe that the trial court in denying the *forum non conveniens* motion in this case, and the Appellate Division in affirming, faithfully applied the principles set forth in *Kurzke*. New Jersey—the place where plaintiffs are domiciled, where the majority of their medical treatment has been rendered, and where business contacts between plaintiffs and General Dynamics–Ordnance have occurred—has vital interests at stake. A motion to dismiss on *forum non conveniens* grounds is not to be granted on a mere balance of conveniences or when a trial in the alternative forum will present as many difficulties as the plaintiff's choice of forum. At least presumptively, a plaintiff is entitled to his choice of forum.

We cannot conclude that the trial court, in weighing the *Gulf Oil* private- and public-interest factors, abused its discretion in finding that defendants failed to carry their burden of demonstrating that New Jersey is a "demonstrably inappropriate" forum.

### V.

#### *Equitable Principles to Apply on Remand*

To be sure, there is no perfect forum in this case. There will be practical problems litigating this matter in New Jersey, just as there would be if it were litigated in South Africa. But the trial court has a panoply of equitable remedies to level the playing field and to guarantee the parties a fair trial. Whatever problems arise can be surmounted. We will enumerate some equitable options available. We do not foreclose the use of others. We cannot forecast how this case will develop through discovery and afterwards. We therefore must leave to the trial court the discretion to guide the process to the end that defendants will receive as fair a trial as humanly possible in this jurisdiction.

*Forum non conveniens* is an equitable doctrine. Its aim, in part, is to ensure that the parties receive a fair trial, and that no party is so prejudiced that it cannot pursue a legitimate claim or present a viable defense. *See, e.g., Civic S. Factors Corp.*

*v. Bonat,* 65 *N.J.* 329, 333, 322 *A.*2d 436 (1974) (stating that primary purpose of *forum non conveniens* is to prevent injustice to defendant). With equitable principles in mind, our courts have the power to craft special remedies to guarantee that justice—a fair hearing—is not denied to any party. *See, e.g., Ayers v. Twp. of Jackson,* 106 *N.J.* 557, 609, 525 *A.*2d 287 (1987) (stating that "a court of equity 'has a broad discretion in framing its decrees in order to adapt the relief to the circumstances of particular cases' " (quoting 30A C.J.S. *Equity* § 599 (1965))); *Salorio v. Glaser,* 93 *N.J.* 447, 469, 461 *A.*2d 1100 (1983) (stating that "[e]quity courts have often recognized matters of public policy, convenience of administration, and practicality as matters to be weighed" in shaping equitable decrees (quoting D. Dobbs, *Remedies* 56 (1973))). In the exercise of its equitable powers under the doctrine of *forum non conveniens,* the trial court has authority to make certain that relevant evidence that bears a strong indicia of reliability is not kept from the jury merely because this case will be tried in New Jersey. *See Heuer v. Heuer,* 152 *N.J.* 226, 242, 704 *A.*2d 913 (1998) ("The equity jurisdiction of our courts should be exercised to do justice, not to create injustice."); *cf. Olivieri v. Y.M.F. Carpet, Inc.,* 186 *N.J.* 511, 521–22, 897 *A.*2d 1003 (2006) (" '[E]ven where [the requirements of collateral estoppel] are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so.' " (quoting *Pace v. Kuchinsky,* 347 *N.J.Super.* 202, 215, 789 *A.*2d 162 (App.Div.2002))).

Plaintiffs will receive the benefit of their choice of forum based on a balancing of the equities.[12] Accordingly, we decline to simply

---

[12] Defendants have not challenged the Appellate Division's holding that if New Jersey is the appropriate forum, this State's law will apply to this *particular* case. Consequently, plaintiffs will be able to present consortium claims in New Jersey that they otherwise would not have been able to pursue in South Africa. Furthermore, if the jury is charged on the potential comparative negligence of the municipality, solely for purposes of allocation of damages, plaintiffs will benefit from *N.J.R.E.* 407, which would bar evidence of remedial changes in the intersection to demonstrate that the municipality was negligent or otherwise culpable on the day of the accident.

affirm the denial of defendants' motion without specifically authorizing the trial court on remand to consider certain measures that will guarantee a fair trial to all parties.

Needless to say, we expect the parties to cooperate with one another for the purpose of removing unnecessary hurdles to the presentation of evidence here. Everyone understands that if the trial were conducted in South Africa, evidence located in that country would be easier to present in that jurisdiction. Although the parties should consider stipulating to documentary evidence obtained from South African authorities or other reliable witnesses, in the absence of agreement by the parties, or feasible alternatives, the court may consider relaxing the Rules of Evidence for the purpose of admitting *relevant* evidence that bears a strong indicia of reliability.

One possible option available to the parties is conducting *de bene esse* depositions of relevant, cooperative witnesses in South Africa. We do not know with certainty that this is a viable option. We acknowledge the difficulties of deposing witnesses in South Africa, which has opted out of Article 23 of the Hague Convention. But case law reveals that obtaining *de bene esse* depositions from witnesses in South Africa for use in the United States may not be an impossible task. *See, e.g., Chrysler Int'l Corp., supra,* 280 *F.*3d at 1362 & n. 9 (noting that *de bene esse* deposition was taken in South Africa for use in case venued in federal district court, although use of deposition disallowed because it was received outside of discovery deadline).

Thus, if one party can arrange to conduct *de bene esse* depositions of relevant, cooperative witnesses in South Africa, the other party cannot complain about costs, and must participate or else waives the right to object by not doing so. If a party chooses not to participate in a *de bene esse* deposition, that party will be able to challenge only the admissibility of the deposition testimony based on our Rules of Evidence. Failure to participate will not be a ground for challenging the admissibility of deposition testimony. We note that plaintiffs and defendants already have secured South

African counsel. Indeed, defendants have presented two affidavits from a tow-truck operator in South Africa. Ordinarily, each party should bear its own costs, but the trial court in its sound discretion is vested with power to apportion costs, if necessary, to see that justice is done.[13]

We are sensitive to defendants' argument that there is no statutory authority to implead the South African municipality as a third-party defendant in New Jersey. Because the South African municipality cannot be impleaded as a party, New Jersey's Comparative Negligence Act, which only applies to "parties," does not permit allocation of fault between defendants and the non-party municipality. *See N.J.S.A.* 2A:15–5.2(a)(2) ("The percentage of negligence or fault *of each party* shall be based on 100% and the total of all percentages of negligence or fault *of all the parties to a suit* shall be 100%." (emphasis added)). Assuming that defendants have taken steps necessary to preserve their rights against the municipality under South African law,[14] and assuming that there is adequate evidence to support a claim of municipal liability going to the jury, the trial court may consider—as a matter of equity—allowing the jury to consider apportioning fault between defendants and the municipality.[15] In this way, the disadvantage to defendants in trying this case in New Jersey will be greatly

---

[13] Given advancements in technology, and assuming the willingness of the parties and potential witnesses, the trial court might consider whether it is feasible to conduct a video conference with a witness in South Africa by attorneys in the United States.

[14] Because defendants have been fighting to try this case in South Africa, it is hardly unfair to insist that they show that good-faith efforts—if any have been necessary up to this point—were made to preserve their rights against the municipality.

[15] As noted earlier, defendants have not challenged the Appellate Division's ruling that New Jersey law applies if this State is deemed the appropriate forum. Therefore, it would seem that any determination of municipal liability—solely for purposes of allocation of damages—may be guided by the substantive liability and immunity provisions of New Jersey's Tort Claims Act, *N.J.S.A.* 59:1–1 to 12–3.

diminished if, in the event of a determination of liability, they can apportion damages in a way consistent with the Comparative Negligence Act.[16]

Last, as stated earlier, we do not foreclose the admission of relevant evidence that bears a strong indicia of reliability, but that otherwise might be excluded on hearsay grounds under our Rules of Evidence. We do not attempt to define the entire realm of equitable steps that may be taken to guarantee a fair trial. We leave those important details to the sound discretion of the trial court.

## VI.

### *Conclusion*

The Appellate Division upheld the trial court's denial of defendants' motion to dismiss on grounds of *forum non conveniens.* We affirm the judgment of the Appellate Division and remand to the trial court for proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, RIVERA–SOTO, HOENS and STERN (temporarily assigned)—7.

*Opposed*—None.

---

[16] Under our Comparative Negligence Act, assuming a finding of negligence among more than two defendants, the jury must determine how much of plaintiffs' damages each defendant will pay. *See Brodsky v. Grinnell Haulers, Inc.*, 181 *N.J.* 102, 128, 853 *A.2d* 940 (2004). Plaintiffs may recover "[t]he full amount of the damages from any party determined by the trier of fact to be 60% or more responsible ... [and] [o]nly that percentage of the damages directly attributable to that party's negligence or fault from any party determined by the trier of fact to be less than 60%." *Id.* at 110, 853 *A.2d* 940 (quoting *N.J.S.A.* 2A:15–5.3(a), (c). Although no judgment can be rendered against the municipality, a damages award against defendants could be reduced in accordance with how the statute would work if the municipality were a party.