NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5132-18T3

MARVIN ESCOBAR-BARRERA,

      Plaintiff-Appellant,

v.

PAUL KISSIN,

      Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

July 1, 2020

APPELLATE DIVISION

Argued telephonically May 20, 2020 –
Decided July 1, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey,
Law Division, Union County, Docket No. L-0783-17.

Daniel J. Williams argued the cause for appellant
(John J. Pisano and Harrell Smith & Williams, LLC,
attorneys; John J. Pisano on the brief).

Edwin J. McCreedy argued the cause for respondent.

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

Plaintiff Marvin Escobar-Barrera appeals from the July 17, 2019 Law

Division order granting defendant Paul Kissin's mid-trial motion for

involuntary dismissal of plaintiff's personal injury complaint, pursuant to Rule 4:37-2(b).[1]  We reverse.

On February 24, 2017, plaintiff filed a complaint seeking damages for personal injuries allegedly sustained as a result of a January 26, 2017 automobile accident during which the vehicle operated by defendant rear-ended plaintiff's vehicle.  Because defendant stipulated to liability, the only issue for trial was whether plaintiff's injuries were permanent and causally related to the accident.

On July 16, 2019, the first day of trial, during jury selection, plaintiff's counsel[2] informed the panel that in addition to plaintiff testifying, he would be calling two doctors, Dr. Allen Pomerantz, a radiologist, and Dr. NingNing He, a pain management doctor.  Counsel also indicated that Dr. Louis Gregory, a chiropractor, and Dr. Tony Wanich, an orthopedist, may be mentioned "throughout the course of the trial."  Following a Rule 104 hearing conducted that day, the judge determined that while plaintiff could testify that he saw a

---

[1]  Rule 4:37-2(b) provides that after a plaintiff "complete[s] the presentation of the evidence on all matters . . . [,] the defendant . . . may move for a dismissal of the action . . . on the ground that upon the facts and upon the law the plaintiff has shown no right to relief."  In considering such a motion, courts decide whether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor."  Ibid.

[2]  Plaintiff's trial attorney, Roosevelt Jean, was "the per diem . . . attorney" retained by John J. Pisano, plaintiff's attorney of record.

chiropractor after the accident, he was barred from discussing the duration and nature of his chiropractic treatment.

Later that day, trial commenced with openings, followed by plaintiff's testimony. Plaintiff testified that on the day of the accident, he began experiencing pain in his "right shoulder," "neck," and "back," but "mostly in [his] right shoulder."[3] When the pain did not subside for "two weeks," he sought treatment from Dr. He. After examining plaintiff, Dr. He referred him for an MRI and recommended that he see a chiropractor, as a result of which plaintiff treated with Dr. Gregory. Plaintiff also continued treating with Dr. He, whom he saw a total of three times. According to plaintiff, notwithstanding the treatment, his "right shoulder" has continued to "bother [him] since the accident," resulting in physical limitations in performing basic daily functions.

In the morning of the second day of trial, plaintiff's counsel alerted the judge that Dr. Gregory was now "available" to testify, to which defense counsel objected on the ground that he would be prejudiced by the surprise testimony. Plaintiff's counsel explained that because Dr. Gregory's report had been provided to defendant and considered by the defense expert, there was no

---

[3] Plaintiff acknowledged being involved in an automobile accident in 2013, but testified he only injured his "lower back and . . . neck" in the earlier accident.

prejudice to defendant.  Defense counsel countered that he had "opened" and "cross-examined . . . plaintiff on [the] assumption" that "only two medical witnesses" would be produced.  Plaintiff's counsel retorted that defense counsel could "give another opening statement" and recall plaintiff to continue cross-examination.  The judge rejected plaintiff's proposals and barred Dr. Gregory's testimony, explaining that "it was represented to [him and to the jury] . . . that there would be two experts: Dr. He and Dr. Pomerantz, period."

Following this colloquy conducted outside the jury's presence, the trial continued that morning with Dr. Pomerantz's testimony.  Dr. Pomerantz, who was qualified as an expert in radiology, testified that based on his review of plaintiff's MRI, plaintiff sustained "a large tear" of "the supraspinatus tendon" in his right shoulder.  After Dr. Pomerantz testified, based on plaintiff's counsel's earlier representation that Dr. He would testify at 1:30 p.m., the judge gave the jury "a long lunch break."  However, when Dr. He failed to appear at 1:30 p.m. as expected, defense counsel requested that "the case . . . be dismissed."

Instead of a dismissal with prejudice, plaintiff's counsel requested that the judge consider any of the following alternatives: (1) grant a twenty-four-hour adjournment for counsel to determine why Dr. He failed to appear, secure

A-5132-18T3

her appearance in court to testify, or conduct "a de bene esse deposition[;]"[4] (2) permit Dr. Gregory to testify instead of Dr. He because he was "another doctor who . . . opined on the issue of causation and permanency[;]"[5] (3) declare a mistrial because Dr. He's non-appearance was "through no fault of [plaintiff;]" or (4) dismiss the complaint "without prejudice."

Plaintiff's counsel described for the judge the circumstances of Dr. He's nonappearance as follows:

> This afternoon, Dr. He advised that she was unavailable. I repeatedly texted her, called her, [and] called her office repeatedly . . . . asking for her to be here. It was my understanding that at the beginning of this trial that Mr. Pisano had contacted her, and she had agreed to testify in this case regarding the issues of permanency and causation, regarding her treatment of . . . plaintiff. The records are marked for identification regarding her treatment and her opinion.
>
> Today she advises that she is not testifying. I spoke to Mr. Pisano's office. It was also his understanding that she is not testifying. . . . I wish I could will her to be here to testify . . . . But she is not

---

[4] "A de bene esse deposition is 'one that is taken provisionally for use if the witness is unavailable at the time of trial.'" Yousef v. Gen. Dynamics Corp., 205 N.J. 543, 560 n.10 (2011) (quoting Graham v. Gielchinsky, 126 N.J. 361, 371 (1991)).

[5] Dr. Gregory treated plaintiff from February 24 to November 29, 2017, and provided a narrative report, dated December 1, 2017, detailing his assessment and treatment of plaintiff. In his report, Dr. Gregory determined that as a result of the accident, plaintiff "sustained a significant and permanent injury to [his] right shoulder in [the] f[or]m of [a] tear of the supraspinatus."

here, and she tells me she is not coming in today. This . . . seriously angers me. She . . . was supposed to be here to testify, but she's not. I don't have her at 1:30 [p.m.] to testify. . . . I advised my adversary of the same . . . .

When the judge asked for clarification regarding Dr. He's exact reason for not appearing, plaintiff's counsel explained she sent him a text message stating "I can't cancel [fifty]-plus patients last minute and run to court for [one]." Plaintiff's counsel could provide no further elucidation as to the doctor's reason for not appearing.

The judge denied plaintiff's application in its entirety. First, the judge stated that "absent a guarantee" that Dr. He was "going to show up in [twenty-four] hours," he would not grant the adjournment request. The judge noted that Dr. He "made her position very clear; for whatever reason, she [was] not going to testify," and thus "an adjournment would [have] be[en] futile at th[at] point in time." Second, the judge explained that Dr. Gregory would not be permitted to testify based on his earlier ruling that the doctor was not "identified as a potential witness." Third, the judge "den[ied] the application for a mistrial based upon the fact that for whatever reason Dr. He . . . [was] not going to appear to testify today or any other day."

Turning to defendant's application, the judge granted defendant's motion for involuntary dismissal under Rule 4:37-2(b), and dismissed plaintiff's

complaint with prejudice. Applying the applicable legal standards, the judge

determined that neither permanency nor causation could be established by

plaintiff to satisfy the verbal threshold proof requirements. According to the

judge,

> the fact that . . . plaintiff had an injury that shows up
> on an MRI and that the injury still exists doesn't even
> remotely come close under any stretch of the
> imagination of proving what . . . is required to be
> proven by objective . . . credible medical evidence
> verified by a physical examination or . . . medical
> testing.

While the judge acknowledged plaintiff's injury, the judge stated plaintiff's

"subjective complaint that he still has pain" does not "provide enough evidence

under the case law to support a claim."

The judge elaborated:

> I've sat through the entire trial. I understand the
> predicament. However, once trials start, it's fair to
> both parties; the trials end absent some extraordinary
> circumstances which might cause a mistrial or
> something else, but none of those circumstances exist
> in this particular case.
>
> We simply have, at this point a doctor, who for
> reasons . . . inexplicable to the [c]ourt and [c]ounsel[,]
> . . . refuses to come in and testify and that leaves the
> proofs at this point in time more than seriously lacking
> under the existing case law and court rules, and we all
> know that there's no way I could charge this jury even
> if I allowed the matter to [go] forward a little bit
> more . . . .

7

. . . [I]t is a most unfortunate set of circumstances; however, this is what litigation is about, this is what trials are about, this is what schedules are about, and I do understand that it puts . . . plaintiff in a very difficult situation. However, . . . no court can simply consider the situation that a party has [been] put into and then ignore the case law and the court rules and everything else.

Courts are called upon to make difficult decisions like this every day, and a trial court sitting at law is not a court in equity. We've been here, we've waited, [c]ounsel has made every effort. I don't dispute in any way, shape, or form the fact that [counsel has] been trying hard to get these people here to do what you needed to do to produce the experts on behalf of [plaintiff], but on the other hand, there's a defendant who's here, and this case needs to be resolved. It needs to be resolved today. So[,] I have no choice except to grant the application and dismiss this matter with prejudice.

On appeal, plaintiff argues the judge "abused [his] discretion in denying . . . plaintiff's request for either an adjournment or mistrial[,] . . . resulting in an injustice to the innocent plaintiff." Plaintiff requests that the dismissal order "be reversed and the matter be remanded for a new trial."

While a "motion for a mistrial is addressed to the sound discretion of the court, . . . the power to grant such motion should be exercised with the greatest of caution." Wright v. Bernstein, 23 N.J. 284, 296 (1957).

However, when the error or irregularity complained of patently fails to take into account the substance of a fundamental right of a party and deprives the party of the essence of such right, in a way that is plainly

8

> ineradicable either by an instruction or other action by the court subsequent to the motion for the mistrial, a mistrial must be granted as a matter of right. A denial of a mistrial in such a situation would be a mistaken exercise of judicial discretion, and hence harmful error since such action by the court would clearly and unequivocally be a manifest denial of justice under the law.
>
> [Ibid. (citations omitted).]

See also Belmont Condo. Ass'n, Inc. v. Geibel, 432 N.J. Super. 52, 97 (App. Div. 2013) ("The grant of a mistrial is an extraordinary remedy that should be exercised only to prevent manifest injustice.").

In Klimko v. Rose, our Supreme Court held that "where a party's claim was completely dependent upon a particular witness's testimony, inability to produce that witness-as distinguished from neglect or willful failure-and the almost certain irretrievable loss of the claim warranted a mistrial, and refusal to grant one was a mistaken exercise of discretion." 84 N.J. 496, 502 (1980). In Klimko, the plaintiff brought a malpractice action against the defendant, a chiropractor, for injuries he allegedly sustained, "including a stroke and temporary paralysis, . . . from chiropractic adjustments performed upon him by [the] defendant." Id. at 497. Plaintiff's only expert witness was a medical doctor who testified on direct examination "that the cause of the stroke was the pressure applied by [the defendant] to [the plaintiff's] neck." Id. at 499. When the expert appeared for cross-examination the following day, the "plaintiff's

counsel allowed him to leave to perform an emergency operation, since the trial judge was temporarily engaged in other matters." Id. at 500. However, as a result of a dispute over additional fees, the expert never appeared again despite the plaintiff's "good faith" but unsuccessful attempt to resolve the problem, prompting the trial court to strike the expert's direct testimony on the defendant's motion. Ibid.

"Believing that he had no case without the stricken testimony, [the plaintiff] moved for a mistrial," id. at 498, which the trial court denied based on the court's belief that the plaintiff's attorney "had caused the problem" by failing to subpoena the expert. The court also believed that granting "a mistrial would be a waste of time" since the expert had "no knowledge of standards applicable to chiropractors" to establish the defendant's negligence. Id. at 501. "The court thereafter granted [the] defendant's motion for involuntary dismissal." Ibid. However, our Supreme Court reversed the trial court's denial of a mistrial, finding that "[f]ailure to produce this witness . . . was not [the] plaintiff['s] fault; at most it was excusable neglect." Ibid. The Court determined that under the circumstances, "refusal to grant a mistrial was prejudicial error" requiring "a new trial" because the expert's "testimony would have permitted the case to go to the jury." Id. at 505.

Like the denial of a mistrial, we review a trial court's denial of a request for an adjournment "under an abuse of discretion standard." State ex rel. Comm'r of Transp. v. Shalom Money St., LLC, 432 N.J. Super. 1, 7 (App. Div. 2013). Whether there was an abuse of discretion depends on the amount of prejudice suffered by the aggrieved party. State v. Smith, 66 N.J. Super. 465, 468 (App. Div. 1961). Thus, refusal to grant an adjournment will not lead to reversal "unless an injustice has been done." Nadel v. Bergamo, 160 N.J. Super. 213, 218 (App. Div. 1978).

In Pepe v. Urban, we ordered a new trial because the trial court denied the plaintiff's mid-trial request for an adjournment when her doctor failed to appear to testify. 11 N.J. Super. 385, 387, 389 (App. Div. 1951). In Pepe, the plaintiff's counsel "completed the presentation of evidence on the subject of negligence," but the doctor "he had subpoenaed . . . on the question of damages . . . had not arrived." Id. at 387. After "[t]he plaintiff's attorney [took] every proper step to obtain the [doctor's] attendance," counsel requested that the court adjourn "the case until the next morning," but the court denied the request and continued the trial without the doctor, resulting in a verdict in favor of the defendant. Id. at 387-88.

In reversing, we held "the trial judge should have granted an adjournment, or otherwise . . . aided [the] plaintiff in her dilemma" because the

absent witness was "the doctor who had treated [the] plaintiff from the day of the accident until shortly before the trial" and "[s]he had no other physician." Id. at 388-89. We concluded "the substantial rights of [the] plaintiff were infringed by the action of the [trial] court, as a result of which she was unable fully to present her case." Id. at 389. We noted that "courts exist for the sole purpose of rendering justice according to law" and "[n]o eagerness to expedite business, or to utilize fully the court's time, should be permitted to interfere with our high duty of administering justice in the individual case." Ibid.

Here, plaintiff had the burden "[u]nder AICRA,[6] to vault the verbal threshold's limitation on the right to claim non-economic damages." Davidson v. Slater, 189 N.J. 166, 186 (2007). To that end, "a plaintiff must establish that 'as a result of bodily injury, arising out of the . . . operation . . . or use of' an automobile, [he or] she has 'sustained a bodily injury which results in' one of the enumerated categories of serious injury," which "includ[es] 'a permanent injury within a reasonable degree of medical probability.'" Ibid. (first, second, and third alterations in original) (quoting N.J.S.A. 39:6A-8(a)). "An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." N.J.S.A. 39:6A-8(a). Only "permanent injuries to a body

_____

6 The Automobile Insurance Cost Reduction Act, N.J.S.A. 39:6A-1.1 to -35.

part or organ, proven by objective evidence, can vault the threshold." Serrano v. Serrano, 183 N.J. 508, 517 (2005); see N.J.S.A. 39:6A-8(a). "[T]he necessary objective evidence must be 'derived from accepted diagnostic tests and cannot be "dependent entirely upon subjective patient response."'" Agha v. Feiner, 198 N.J. 50, 60 (2009) (quoting Davidson, 189 N.J. at 181).

Here, "in order to avoid a directed verdict under [N.J.S.A.] 39:6A-8(a)'s express standards," Davidson, 189 N.J. at 187, plaintiff was required to prove with objective clinical evidence that his injuries were permanent and causally related to the automobile accident, and Dr. He was expected to provide the requisite medical evidence. Indeed, the record reveals that Dr. He examined plaintiff two weeks after the accident and conducted two additional examinations. Her examination "revealed tenderness," and "[r]estricted range of motion on abduction and internal rotation [in plaintiff's] right [shoulder]." In her report, Dr. He opined "[b]ased on a reasonable degree of medical probability" that plaintiff's injuries were "casually related to the [motor vehicle] accident and permanent." Because the judge had barred Dr. Gregory from testifying, plaintiff had no other doctor to provide this evidence.

Under the circumstances, the judge's denial of an adjournment or a mistrial constituted a mistaken exercise of discretion. Plaintiff's need for an adjournment or a mistrial did not result from careless conduct by plaintiff or

his attorney, and Dr. He's testimony was essential to "permit[] the case to go to the jury."  Klimko, 84 N.J. at 505.  Thus, Dr. He's non-appearance meant that plaintiff "was unable fully to present [his] case."  Pepe, 11 N.J. Super. at 389. Even assuming, as defendant suggests, that Dr. He's failure to appear was the fault of counsel for not scheduling her testimony in a timely manner,[7] "at most" counsel's conduct "was excusable neglect."  Klimko, 84 N.J. at 501.  See Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 574 (2003) (explaining that "the sins of the advocate should not be visited on the blameless litigant" (quoting Aujero v. Cirelli, 110 N.J. 566, 573 (1988))).

In fact, the judge repeatedly acknowledged that plaintiff's "[c]ounsel ha[d] made every effort" to secure Dr. He's appearance once she made it clear she would not come to court.  Because plaintiff's claim was completely dependent upon Dr. He's testimony, his inability to produce her as a witness resulted in the "irretrievable loss of [his] claim."  Klimko, 84 N.J. at 502.  See Kosmowski, 175 N.J. at 575 (holding that "[w]hen an attorney is unable to try a case due to . . . unavailability of an expert, dismissal of the complaint with

---

[7] We agree with defendant that plaintiff's belated assertion in his merits brief "that Dr. He would not come to court because she feared cross-examination" was not presented to the trial court and is not a part of the record.  See R. 2:5-4(a); Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 452 (2007) ("Our appellate courts will not ordinarily consider evidentiary material that is not in the record below.").

prejudice 'is drastic punishment and should not be invoked except in those cases where the actions of the party show a deliberate and contumacious disregard of the court's authority.'" (quoting Allegro v. Afton Village Corp., 9 N.J. 156, 160-61 (1952))).

Plaintiff was entitled to "a reasonable modicum of judicial indulgence." Tucci v. Tropicana Casino & Resort, Inc., 364 N.J. Super. 48, 54 (App. Div. 2003). The judge's refusal to afford plaintiff some measure of relief resulted in the infringement of plaintiff's "substantial rights," Pepe, 11 N.J. Super. at 389, and "a manifest denial of justice under the law." Wright, 23 N.J. at 296. Accordingly, the July 17, 2019 order of disposition is reversed, and the matter is remanded for a new trial. Based on our decision, we need not address plaintiff's alternative argument that he is entitled to a new trial because the judge abused his discretion by barring Dr. Gregory from testifying on the ground that he was a surprise witness.

Reversed and remanded for a new trial. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5132-18T3