751 A.2d 518

RONALD J. CAVANAUGH, PLAINTIFF–RESPONDENT, v. SKIL CORPORATION, DEFENDANT–APPELLANT, JOHN DOE 1 THROUGH 20, (FICTITIOUS NAMES OF PERSONS AND/OR BUSINESS ORGANIZATIONS MORE FULLY DESCRIBED HEREIN); JOINTLY, SEVERALLY, AND IN THE ALTERNATIVE, DEFENDANTS.

Argued February 28, 2000—Decided May 24, 2000.

*Joseph Di Rienzo, Sr.,* argued the cause for appellant (*Di Rienzo & Di Rienzo,* attorneys; *Mr. Di Rienzo* and *Joseph Di Rienzo, Jr.,* on the briefs).

*Bruce H. Zamost,* argued the cause for respondent (*Colton, Stein & Zamost,* attorneys).

*Eric J. Ludwig,* argued the cause for *amicus curiae,* The Association of Trial Lawyers of America–New Jersey (*Stark & Stark,* attorneys).

The opinion of the Court was delivered by

VERNIERO, J.

This is a products liability action. Plaintiff suffered injuries, including the loss of a toe, after he put down defendant's portable circular saw, which then "traveled" about eighteen inches across the floor and ran over his foot. A jury awarded plaintiff $160,000. The principal issues in this appeal are whether the trial court erred (1) in charging the jury on the state-of-the-art defense, thereby improperly shifting the burden of proof to defendant; and (2) in ruling that comparative negligence could not be used as a defense in products liability cases involving certain workplace injuries.

With one modification, we are satisfied to affirm the judgment of the Appellate Division upholding the jury's verdict substantially for the reasons expressed in the opinion below. *Cavanaugh v. Skil Corp.*, 331 *N.J.Super.* 134, 751 *A.*2d 564 (App.Div.1999). The modification concerns the state-of-the-art defense. We emphasize the importance of correctly allocating the burden of proof whenever that defense is asserted.

The state-of-the-art defense has been codified at *N.J.S.A.* 2A:58C–3, which states in relevant part:

a. In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if:

(1) At the time the product left the control of the manufacturer, there was not a practical and technically feasible alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of the product;

. . . .

c. No provision of subsection a. of this section is intended to establish any rule, or alter any existing rule, with respect to the burden of proof.

Until today, this Court has never stated directly and definitively that, (1) when contending that the "state of the art" rendered the technology urged by the plaintiff unfeasible, the defendant must prove the technological state-of-the-art at the time the product left its control, and (2) the plaintiff bears the burden of proving that when the product was manufactured, it did not conform to whatever may have been the feasible technology. The Court approves those allocations of the burden of proof on the basis of the Appellate Division's opinion, which includes this passage:

The statutory state-of-the-art defense is available to all defendants in cases filed after July 22, 1987. State-of-the-art "refers to the existing level of technological expertise and scientific knowledge relevant to a particular industry at the time a product is designed." *O'Brien v. Muskin Corp.*, 94 *N.J.* 169, 182, 463 *A.*2d 298 (1983). State-of-the-art or "the very safest product of that type which [an] industry could define at the time of manufacture" "is defined as a product for which there was no reasonable alternative design." Dreier, Goldman & Katz, *New Jersey Products Liability & Toxic Torts Law* § 14:2 at [349–50] (Gann 1999).

Of course, " '[w]hen an affirmative defense is raised [in a civil case], the defendant normally has the burden of proving it.' " *Roberts v. Rich Foods, Inc.,*

139 *N.J.* 365, 378, 654 *A.*2d 1365 (1995) (quoting Biunno, *Current N.J. Rules of Evidence,* comment 2 on *Evid.R.* 101(b)(1) (1994–95)). However, "[t]he burden on a defendant who claims a state-of-the-art defense is to prove only the technological state-of-the-art when the product was manufactured." *Fabian v. Minster Mach. Co.,* 258 *N.J.Super.* at 274, 609 *A.*2d 487. "The defendant ha[s] no burden to prove its conformity with the state-of-the-art." *Ibid.* "It remains plaintiff's burden, unaffected by the Product Liability Act, to prove non-conformity." *Ibid.*

> [*Cavanaugh, supra,* 331 *N.J.Super.* at 164–65, 751 *A.*2d 564 (first citation omitted.) ]

Part of the confusion in this area of the law stems from the interplay between the statutory language and a plaintiff's general burden of proof in a civil action. As noted, the statute refers to "a practical and technically feasible alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of the product[.]" *N.J.S.A.* 2A:58C–3. In considering that language, we observed in *Lewis v. American Cyanamid Co.,* 155 *N.J.* 544, 571, 715 *A.*2d 967 (1998), that under the state-of-the-art defense the manufacturer "bears the burden of proving that its design of the [product] represented the state of the art." Moreover, the *Restatement (Third) of Torts: Products Liability* (the "*Restatement (Third)*") provides:

> A product ... is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe[.]
>
> [*Restatement (Third) of Torts: Products Liability,* § 2(b) (1998).]

Comment f of the *Restatement (Third)* describes the plaintiff's burden and instructs that "[t]o establish a prima facie case of defect, the plaintiff must prove the availability of a technologically feasible and practical alternative design that would have reduced or prevented the plaintiff's harm." Thus, in looking at both the statute and Comment f to the *Restatement (Third),* it might appear that the plaintiff and defendant share the same burden of proof, or at least that the burdens overlap to some significant degree.

Today's decision should clarify the discrete differences in the burdens of proof placed on the parties in a design-defect case in which the state-of-the-art defense is interposed. In a recent commentary, Judge Dreier explained the differences between the *Restatement (Third)* approach and our New Jersey statute as follows:

> New Jersey has adopted a "practical and technically feasible alternative design" test to define state-of-the-art. If a defendant can prove that there was no practical or technically feasible alternative design that both would have prevented the harm and would not have substantially impaired the function of the product, the defendant cannot be held liable for failure to provide an alternative design. This state-of-the-art defense is stated as absolute, and is no longer merely a risk-utility factor. Note that this is not an attack just on the particular alternative presented by the plaintiff. This defense must show that there were no other alternatives that fit the statutory definition. There is an obvious overlap between a defendant's proof of this defense and a plaintiff's proof of a "reasonable alternative design" under the *Restatement (Third)*.
>
> The Reporters of the *Restatement (Third)*, aware of the confusion surrounding a definition of state-of-the-art, have abandoned the term and simply proffer that "a design is defective if the product *could have been* made safer by the adoption of a reasonable alternative design." ... The *Restatement (Third)*'s use of the word "could" precludes any unfeasible design from being a "reasonable" alternative. Thus, both the New Jersey statute and the *Restatement (Third)* require that the alternative design be feasible, not merely theoretically possible. New Jersey's statute creates an absolute defense. Can the *Restatement (Third)* phrase be interpreted as any less, but with the burden placed on the plaintiff rather than the defendant? When viewed in this light, the different terminology can be harmonized.
>
> The main differences are the burden of proof and the scope of alternatives to be negated or proven. The plaintiff, under New Jersey law, is usually required to show the existence of a reasonable alternative design. But where the defendant shows that there exists no design alternative which was practical and technically feasible, the jury need not weigh the plaintiff's proposed design against the defendant's. Under the *Restatement (Third)* the plaintiff must show that the [foreseeable risks of harm posed by the] product "*could have been* reduced or avoided by the adoption of a reasonable alternative design." Thus, a showing of feasibility is the plaintiff's responsibility. Except for the burden of proof and possible scope differences, the *Restatement (Third)* language and the New Jersey test appear similar where a state-of-the-art defense is interposed.
>
> [William A. Dreier, *The Restatement (Third) of Torts: Products Liability and New Jersey Law—Not Quite Perfect Together*, 50 *Rutgers L.Rev.* 2059, 2081–83 (1998) (citations omitted).]

██ Hence, in asserting the defense, the defendant must establish the state-of-the-art at the time of distribution. *Lewis, supra,*

155 *N.J.* at 571, 715 *A.*2d 967. However, the plaintiff must prove the product's non-conformity with the feasible technology to overcome what is otherwise an absolute bar to recovery. *Fabian v. Minster Mach. Co.,* 258 *N.J.Super.* 261, 274, 609 *A.*2d 487 (App. Div.), *certif. denied,* 130 *N.J.* 598, 617 *A.*2d 1220 (1992). Importantly, the statute does not alter the plaintiff's burden to show defendant's failure to follow a reasonable alternative design. *Id.* at 273, 609 *A.*2d 487.

■ Not only does the defendant retain the prerogative of asserting the state-of-the-art defense, the defendant is also obliged under our notice-pleading rules to properly interpose the defense when seeking its protection. *R.* 4:5–3 and –4. That way, the issues are litigated fairly. In the course of a trial, the defendant may present rebuttal evidence concerning a product's reasonable design but that, without more, does not automatically equate with an assertion of the state-of-the-art defense. In that circumstance, it may be unfair to saddle a defendant with a complicated defense it did not wish to interpose. Conversely, it may be unfair to the plaintiff to allow the defendant to defend on state-of-the-art grounds, with the possible effect of barring the plaintiff's claims, without some form of advance notice.

■ In this case, the trial court charged the jury on state-of-the-art because it determined that defendant had asserted the defense at least in principle, if not by name. The Appellate Division concluded:

> Here, plaintiff tried to prove the Skilsaw was defectively designed because a safer alternative existed, to wit: a portable circular saw with a blade brake. Defendant, through [its expert's] testimony, tried to prove plaintiff's proposed safer alternative was neither practical nor feasible because a portable circular saw with a blade brake would be more dangerous than a portable circular saw without a blade brake. Defendant also took issue with the practicality of the "flag," but defendant's brief focuses on the brake.... [D]efendant here, in principle, had asserted the state-of-the-art defense. *Indeed, even though defendant did not challenge the technological availability of a blade brake in 1988, it most certainly challenged its*

> *practicality.* *N.J.S.A.* 2A:58C–3(a)(1). The judge's decision to charge the jury on the state-of-the-art defense was not erroneous....
>
> [*Cavanaugh, supra,* 331 *N.J.Super.* at 167, 751 *A.2d* 564 (emphasis added).]

We disagree. A product manufacturer, challenging only the practicality of the alternative device and not its technological feasibility, has not asserted the state-of-the-art defense. We assume that, in referring to the "technological availability" of the blade brake, the Appellate Division was speaking of what would otherwise be termed the device's "technological feasibility."

■ In analyzing the issues presented, it is important to note that the statute "has not appreciably altered the common law interpretation of risk/utility analysis outside of the ... absolute defenses." *Fabian, supra,* 258 *N.J.Super.* at 271–72, 609 *A.2d* 487. It is not necessary for us to discuss at any length the risk-utility factors typically argued in a products-liability action. Those factors have been fully discussed elsewhere. *See, e.g., Johansen v. Makita USA, Inc.,* 128 *N.J.* 86, 95–97, 607 *A.2d* 637 (1992) (providing summary of this Court's adoption of risk-utility analysis and seven factors considered).

Suffice it to say for present purposes, litigation in this area often centers on design reasonableness. As one court observed:

> Although there are seven listed factors in the classical statement of the risk-utility analysis, *see Cepeda v. Cumberland Eng'g Co.,* 76 *N.J.* 152, 174, 386 *A.2d* 816 (1978) and its progeny, the prevalent view is that, unless one or more of the other factors might be relevant in a particular case, the issue upon which most claims will turn is the proof by plaintiff of a "reasonable alternative design ... the omission ... [of which] renders the product not reasonably safe."
>
> [*Green v. General Motors Corp.,* 310 *N.J.Super.* 507, 517–18, 709 *A.2d* 205 (App.Div.1998) (quoting the *Restatement (Third)* ), *certif. denied,* 156 *N.J.* 381, 718 *A.2d* 1210 (1998).]

*See also Fabian, supra,* 258 *N.J.Super.* at 273, 609 *A.2d* 487 (emphasizing that "[w]hether the defect is in the design or due to a lack of warning, unless an absolute defense is interposed, reasonableness is the prime factor in determining liability").

In other words, because reasonableness is central to determining the defendant's liability in a design-defect action, it is not unusual in the course of such an action for the manufacturer to argue the practicality of the plaintiff's proposed design. In so

doing, the manufacturer submits evidence to rebut the plaintiff's *prima facie* case and may even prevail in the litigation if the jury concludes that the plaintiff has not met its burden of demonstrating the defendant's failure to follow a reasonable alternative design. However, as previously noted, a defendant submitting rebuttal evidence or debating risk-utility factors in a design-defect case may be confusingly similar to, but does not necessarily equate with, the assertion of the statutory state-of-the-art defense.

The hazard in giving the state-of-the-art instruction in a case in which the manufacturer challenges only the alternative device's practicality is apparent because, as indicated above, the defendant has the attendant burden to "prove" the state-of-the-art when that instruction is given. Consequently, if the defendant argues that a proposed design was not practical because, for example, it increased rather than decreased the risk of harm to the consumer, but admits that the design was technically feasible, then the jury might incorrectly believe that it must find against the defendant solely because the technology was available—without any burden on the plaintiff to show that the defendant failed to follow a reasonable alternative design.

We acknowledge that the complex wording of *N.J.S.A.* 2A:58C-3 may admit of different interpretations. However, "our function is to make sense of a statute." *Strasenburgh v. Straubmuller*, 146 *N.J.* 527, 542, 683 *A.*2d 818 (1996). In that regard, we are persuaded that, under a sensible reading of the statute and in keeping with the discrete but important differences between interposing an absolute defense and merely rebutting the elements of a cause of action, the absence of both a practical and technically feasible alternative device is a necessary predicate to barring liability under the state-of-the-art defense. (Obviously, if the device is not technically feasible, the notion of practicality may be subsumed by the proofs regarding technological feasibility.) *See also* William A. Dreier, *Analysis: 1987 Products Liability Act,* 41 *Rutgers L.Rev.* 1279, 1297 n. 126 (1989) (concluding that pursuant to statute "[s]tate-of-the-art evidence is evidence that no 'practical

*and* technically feasible alternative design' existed when the product left the control of the manufacturer") (emphasis added).

Accordingly, it was error on the part of the trial court to charge the jury in the fashion that it did. We are satisfied, however, viewing the record and jury instructions as a whole, that the trial court's action did not unfairly prejudice defendant or produce an unjust result. As the Appellate Division noted:

> This case was presented to the jury as a defective design case. The competing experts, as our review of the evidence clearly reveals, clashed directly in this design confrontation. Counsel argued the case to the jury on the competing design theories. The judge clearly charged the jury that plaintiff had the burden of proving a design defect. The jury found that the circular saw was "defectively designed" in answer to special interrogatories. The jury found the defective design was "a proximate cause of the accident." None of the verdict form special interrogatories dealt with the "state-of-the-art" issue. . . . We are satisfied that the issue of defective design was fairly fought out and clearly resolved by the jury.
>
> [*Cavanaugh, supra,* 331 *N.J.Super.* at 169–70, 751 *A.*2d 564.]

Because the jury correctly understood that plaintiff had the ultimate burden to prove that defendant's product was defective, its verdict should not be disturbed on appeal. *Wanetick v. Gateway Mitsubishi,* 163 *N.J.* 484, 496, 750 *A.*2d 79 (2000) (upholding verdict in consumer-fraud case even though jury charge was erroneous because record did not indicate "that the jury was confused by the erroneous instruction or that the error resulted in an unjust outcome"); *see also Fisch v. Bellshot,* 135 *N.J.* 374, 392, 640 *A.*2d 801 (1994) (observing that "[c]ourts uphold even erroneous jury instructions when those instructions are incapable of producing an unjust result or prejudicing substantial rights").

As modified, the judgment of the Appellate Division is affirmed.

*For modification and affirmance*—Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN, LONG, VERNIERO and LaVECCHIA—7.

*Opposed*—None.