**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2913-21

H and H MANUFACTURING
COMPANY, INC., a/k/a H&H,
THOMAS TOMEI and
JANNETTE TOMEI,

     Plaintiffs-Respondents,

v.

PAUL BUCCO, ESQUIRE,
DAVIS BUCCO MAKARA &
DORSEY f/k/a DAVIS BUCCO
f/k/a DAVIS BUCCO & ARDIZZI,
JOSEPH FIORAVANTI, ESQ.,
MARK TOMEI, Individually and as
Guardian ad Litem for VINCENT TOMEI[1],
and as Personal Representative of the Estate
of Marie Tomei, ESTATE OF VINCENT
TOMEI[2], ESTATE OF MARIE TOMEI,
JAMES FLANDREAU, ESQUIRE, and
PAUL, FLANDREAU & BERGER, LLP,

     Defendants-Respondents.

_____

[1] We note Vincent Tomei passed away on April 28, 2023 and as a result, Mark Tomei is no longer his Guardian ad Litem.

[2] The Estate of Vincent Tomei was substituted for Vincent Tomei in June 2023.

Submitted September 18, 2023 – Decided November 13, 2023

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1537-21.

Obermayer Rebmann Maxwell & Hippel LLP, attorneys for appellants (Matthew A. Green and Lars J. Lederer, on the brief).

Connell Foley LLP, attorneys for respondents Paul Bucco, Esquire and Davis Bucco Makara & Dorsey (Andrew C. Sayles, of counsel and on the brief; Stephen R. Turano, on the brief).

Narducci, Moore, Fleisher Roeberg & Wolfe, LLP, attorneys for respondent Joseph Fioravanti, Esq. (Patrick James Wolfe, Jr., on the brief).

Ciardi Ciardi & Astin, attorneys for respondent Mark Tomei (Albert Anthony Ciardi, III and Nicole Marie Nigrelli, on the brief).

Florio Perrucci Steinhardt Cappelli Tipton & Taylor, LLC, attorneys for respondent Vincent Tomei, join in the brief of respondent Mark Tomei.

DiMarino, Lehrer & Collazo, PC, attorneys for respondent Estate of Marie Tomei, join in the brief of respondent Mark Tomei.

Kaufman Dolowich & Voluck, LLP, attorneys for respondents James Flandreau, Esquire and Paul, Flandreau & Berger, LLP (Robert Alan Berns and Timothy Mark Ortolani, of counsel and on the brief).

PER CURIAM

Plaintiffs H and H Manufacturing Company, Inc. (H&H), Thomas Tomei (Thomas),[3] and Jannette Tomei (Jannette) (collectively, plaintiffs) appeal from an April 12, 2022 Law Division order granting in part, and denying in part, the individual motions to dismiss plaintiffs' complaint filed by defendants Paul Bucco, Esq. (Bucco); Davis Bucco Makara & Dorsey (Davis Bucco); Joseph Fioravanti, Esq. (Fioravanti); Mark Tomei (Mark), individually, as guardian for Vincent Tomei (Vincent), and as personal representative of the Estate of Marie Tomei; Vincent; the Estate of Marie Tomei (Marie); James Flandreau, Esq. (Flandreau); and Paul, Flandreau & Berger, LLP (collectively, defendants). Plaintiffs' complaint alleges misconduct by defendants leading up to and during ongoing litigation between the parties in Delaware County, Pennsylvania.

The court dismissed plaintiffs' ten-count complaint without prejudice based on the doctrine of forum non conveniens. Alternatively, it determined counts one through eight and ten of the complaint were barred by Pennsylvania's two-year statute of limitations, which it applied after conducting a choice-of-law analysis and concluding Pennsylvania's interest in this action alleging misuse of the Pennsylvania court system was greater than New Jersey's interest.

---

[3] We use first names to distinguish the members of the Tomei family, intending no disrespect.

A-2913-21

We are satisfied the court did not abuse its discretion in determining New Jersey is an inappropriate forum for this action. We therefore affirm the dismissal of plaintiffs' complaint without prejudice based on forum non conveniens. We also conclude the court erred when it applied the incorrect choice-of-law analysis to determine plaintiffs' claims were barred by the statute of limitations.

In light of our decision to affirm the court's forum non conveniens determination, we also conclude the better course of action is to vacate the court's April 12, 2022 order dismissing all but count nine of the complaint, a claim under Pennsylvania's Dragonetti Act, 42 Pa. Cons. Stat. § 8351-8354,[4] with prejudice based on the statute of limitations. As plaintiffs have refiled their complaint in Pennsylvania, we find it more appropriate for the Pennsylvania court to address the choice of law issue in the first instance, in the context of the refiled action.

I.

---

[4] The Dragonetti Act creates a cause of action against "a person who takes part in the procurement, initiation or continuation of civil proceedings against another" who "acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 Pa. Cons. Stat. § 8351.

A-2913-21

We refer to the recitation of facts underlying the parties' dispute set forth in our previous unpublished opinion, H and H Manufacturing Company v. Tomei, No A-4209-19 (App. Div. Dec. 29, 2021) (slip op.), as follows:

> H&H is a corporation that manufactures parts for industrial turbines and has its principal place of business in Delaware County, Pennsylvania. Vincent [wa]s a retired certified public accountant who handled H&H's books and records and other financial corporate documents and served on its board of directors.
>
> Thomas . . . served on [H&H's] board of directors but also held the office of president and general manager, overseeing all aspects of H&H's day-to-day operations. Since 1984, H&H has been wholly owned by the Tomei family and affiliated trusts whose beneficiaries are Tomei family members.
>
> Over the course of their business relationship, Thomas and Vincent's positions became adverse. On April 8, 2013, H&H held a special meeting of the stockholders. [Bucco] acted as secretary at the meeting and prepared the minutes, which indicated, in part, that both Vincent and Thomas would serve on the board of directors for a one-year term, and that Davis Bucco would represent H&H in all legal matters in 2013.
>
> Upon receiving the meeting minutes, Thomas wrote to . . . Bucco and objected to several aspects of the proposed minutes, including that Davis Bucco had been appointed to represent H&H . . .
>
> In May 2013, [Vincent and Thomas had a dispute over H&H's finances.] . . . [W]ithout approval of the board of directors or other shareholders, Vincent sent Thomas a fax purporting to terminate him from his employment

with H&H. On June 3, 2013, Vincent held an alleged meeting of the shareholders where he attempted to alter the board of directors, replacing Thomas with Mark. Thomas was not provided proper notice of the meeting.

On June 17, 2013, Vincent filed suit in the Pennsylvania Court of Common Pleas, Delaware County . . . in his own name and, ostensibly, on behalf of H&H, asserting claims of breach of contract, breach of fiduciary duty, and conversion, and also requesting equitable relief. Specifically, Vincent claimed to be owner of all H&H voting stock . . . [while] Thomas was a minority shareholder who owned only non-voting shares and who had been terminated from H&H and removed from its board of directors. He also alleged that Thomas converted H&H funds for personal use, wrongfully took possession of and retained H&H books and records, refused to sell his shares to H&H upon his termination as required by contract, and failed to pay Vincent his salary as required by his employment agreement. The plaintiffs [in the Delaware County action] were represented by . . . Bucco and the Davis Bucco firm. Thomas filed an answer with counterclaims.

[Id. at 3-5.]

In June 2016, Vincent's wife, Marie, represented by Fioravanti, sought and obtained permission to intervene in the Delaware County action, asserting claims against Thomas related to her alleged ownership in H&H. Thomas brought counterclaims against Marie as well. In March 2017, Marie passed away. The court appointed Flandreau and Paul, Flandreau & Berger to serve as executor ad litem for Marie's estate in the Delaware County action.

6

In addition,

> [o]n December 8, 2017, following a bench trial, the court found in favor of Thomas on all counts in the complaint [and intervenor complaint]. The court determined Vincent forged and fabricated H&H's corporate documents, including shareholder certificates and meeting minutes to establish his ownership in H&H. It further found that all outstanding H&H shares were owned by the Thomas Tomei Trust, of which Thomas was the sole beneficiary, and the estate of Marie . . . It also determined that Thomas's alleged termination and removal from the board of directors were void, and that Thomas was "authorized to make all decisions concerning the operations and management of H&H." . . .
>
> [T]he court also dismissed all claims Vincent asserted on H&H's behalf, concluding it was "not a proper party to [the] litigation" as Vincent "lack[ed] standing to sue on behalf of H&H" because "H&H's board of directors never approved the filing of [the] lawsuit or ratified its filing" and Vincent failed to file a proper derivative suit.
>
> The Pennsylvania appellate court affirmed, and the Pennsylvania Supreme Court denied further review. Throughout the Delaware County [a]ction and all related appeals, . . . Bucco and Davis Bucco represented Vincent and purported to represent H&H's interests, signing all pleadings and appellate submissions on its behalf.
>
> [Id. at 5-6.]

On December 11, 2019, H&H filed a complaint, which is not directly involved in this appeal, in the Law Division against Mark, individually and as

guardian ad litem for Vincent, and Vincent (first Law Division action). H&H alleged those defendants breached their fiduciary duty, committed fraud and corporate waste, converted H&H's property, engaged in a civil conspiracy, were unjustly enriched, and tortiously interfered with contract in connection with the events underlying and arising during the Delaware County litigation, and sought, as declaratory relief, return of corporate records. Before us, plaintiffs maintain the claims in the first Law Division action "are based, in part, on the damages sustained by H&H when Vincent . . . sued Thomas . . . on H&H's behalf in the [Delaware County action] without authority."

In the first Law Division action, H&H moved to disqualify Bucco from representing Vincent, which the Law Division granted. We granted Bucco leave to appeal and stayed the litigation pending our disposition. H&H Mfg. Co. v. Tomei, No. AM-0538-19 (App. Div. July 23, 2020).

Despite our stay order, H&H moved to amend its complaint to add Thomas and Jannette as plaintiffs and Bucco; Davis Bucco; Fioravanti; Marie; Mark, as personal representative of Marie's estate; Flandreau; and Paul, Flandreau & Berger as additional defendants. It also sought to add claims under Pennsylvania's Dragonetti Act and for abuse of process. In support of its motion, H&H alleged "[l]eading up to the Delaware County Action, Davis Bucco

inserted itself into the affairs of H&H outside of their role as counsel on limited matters" and falsified meeting minutes which they later "used as a basis for the Davis Bucco representation of H&H in the effort to unlawfully wrest control and ownership of H&H from Thomas."

Plaintiffs ultimately withdrew the motion to amend and filed a new Law Division complaint, which is the matter at issue before us, on May 21, 2021 (second Law Division action). Plaintiffs' second Law Division action included the same causes of action as H&H's complaint in the first Law Division action but added those claims and parties it sought to add by way of their withdrawn motion to amend. Plaintiffs concede their claims in the second Law Division action "stem from the same underlying facts and circumstances" as those in the first Law Division action, but assert they instituted the second action to "preserve and assert claims which were previously intended for inclusion in the first action" by way of its motion to amend.

In their May 2021 complaint, plaintiffs identified H&H as a Pennsylvania corporation and Thomas, Jannette, Mark, Marie, and Vincent as Florida citizens. They also stated, however, Thomas, Jannette, Marie, and Vincent resided in New Jersey "during matters complained of herein and maintain[] the same residential address in New Jersey." In their merits brief before us, plaintiffs clarify that

Thomas and Jannette "reside in New Jersey part-time." Plaintiffs also identified Bucco, Fioravanti, and Flandreau as Pennsylvania attorneys in the complaint, with Davis Bucco and Paul, Flandreau & Berger being Pennsylvania law firms. They also noted Mark was appointed Vincent's guardian pursuant to a New Jersey court order.

Relevant to their arguments on appeal, plaintiffs alleged certain activities giving rise to the complaints occurred in New Jersey. For example, they claimed Vincent falsified minutes of board meetings which took place in New Jersey between 1998-2000 and again in 2012. They also specifically claimed the April 8, 2013 board meeting at which Bucco fabricated meeting minutes and "appointed himself and his firm as counsel to H&H" was held in New Jersey.

All defendants moved to dismiss the May 2021 complaint under Rule 4:6-2(a) and (e). Plaintiffs opposed the motions and moved to consolidate the two then-pending Law Division actions, arguing they "involve[d] nearly identical facts related to the Delaware County Action . . . which give rise to the claims therein." The court stayed the motions in the second Law Division action pending our disposition of Bucco's appeal in the first Law Division action. On December 29, 2021, we reversed Bucco's disqualification and remanded for further proceedings. H&H Mfg. Co., No. A-4209-19 (slip op. at 7).

The court heard oral argument on plaintiffs' consolidation application and defendants' motions to dismiss and, after considering the parties' submissions and arguments, granted in part and denied in part defendants' dismissal motions. In light of that disposition, it considered plaintiffs' consolidation application moot.

The court first determined New Jersey had subject matter jurisdiction over count nine, the Dragonetti Act claim, and plaintiffs had pled a cognizable claim, at least against Bucco. It also noted none of the defendants had moved to dismiss count nine on statute of limitations grounds.

The court next dismissed the remaining nine counts with prejudice, based on Pennsylvania's two-year statute of limitations. See 42 Pa. Cons. Stat. § 5524. Although plaintiffs conceded their claims would be barred by Pennsylvania's two-year statute of limitations, they argued the court should apply New Jersey's six-year limitations period. See N.J.S.A. 2A:14-1. Specifically, they argued the parties were New Jersey residents when Vincent and Bucco initiated the Delaware County litigation and certain meetings in which the alleged fraud giving rise to that litigation occurred took place in New Jersey.

The court disagreed and, applying the governmental interest approach to resolving conflicts of law, concluded Pennsylvania had a superior interest in the

action.  Although it recognized some of the litigants were New Jersey residents during the Delaware County litigation, it concluded "every important thing occurred in Pennsylvania, not the least of which . . . was a Delaware County lawsuit."  It further stated, "I have no question using the governmental interest . . . test that New Jersey uses to determine choice of laws . . . issues that Pennsylvania has a . . . greater interest in the allegation that lawyers and litigants misused their courts."

Turning to the parties' arguments with respect to forum non conveniens, the court first rejected plaintiffs' contention there was no adequate alternative forum, because they could bring their claims in Pennsylvania.  Next, it applied the public and private interest factors articulated in D'Agostino v. Johnson & Johnson Inc. (D'Agostino I), 225 N.J. Super. 250, 263 (App. Div. 1988) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 508-09 (1947)), and concluded it would be demonstrably inappropriate for a New Jersey court to adjudicate claims stemming from "the misuse of the Pennsylvania court system."  On this point, the court found the public interest factors weighed heavily in favor of dismissing the complaint.

The court noted there were currently four judicial vacancies in Camden County and it was "drowning in civil cases."  While acknowledging some

underlying activity occurred in New Jersey, the court found the case was "not a localized controversy" and there was no "local interest in the subject matter" such that community members would wish to view the trial. Further, it found "New Jersey citizens have no particular interest in adjudicating whether or not the Pennsylvania court system was appropriately used."

As to the private interest factors, the court found many were inapplicable; it recognized, however, certain practical problems with continuing the litigation in New Jersey, including its lack of familiarity with Pennsylvania court procedure and potential costs associated with additional briefing on Pennsylvania law. In sum, the court concluded "this case involves a number of attorney defendants and in particular allegations against attorneys and parties, [claiming] the misuse of the Pennsylvania court system." The court reasoned it could not identify "a more compelling reason why it should be the Pennsylvania court system to do the adjudication."

The parties appeared before the court again on April 6, 2022, to clarify the language of the court's order. The court then entered an April 12, 2022 order that (1) dismissed counts one through eight and ten of plaintiffs' complaint with prejudice "based on the statute of limitations[] for any conduct that occurred on or before May 20, 2019"; (2) denied defendants' motions to dismiss count nine,

the Dragonetti Act claim, based on lack of subject matter jurisdiction; and (3) granted defendants' motions to dismiss all counts without prejudice based on forum non conveniens. It also noted "[p]laintiffs would have been granted leave to file an [a]mended [c]omplaint . . . to clarify facts that support an [a]buse of [p]rocess cause of action for events that occurred on or after May 21, 2019[,] except that the issue is moot . . . ."

On May 3, 2022, plaintiffs filed a complaint against the same defendants in the Pennsylvania Court of Common Pleas, Philadelphia County, alleging the same causes of action. All defendants accepted service in the Philadelphia County action. Plaintiffs then filed a notice of appeal with respect to the court's order dismissing the second Law Division action.[5]

## II.

Before us, plaintiffs contend "[t]he trial court erred when it dismissed [their] [c]omplaint based on the doctrine of forum non conveniens," on four bases. First, they argue the court improperly balanced the public and private interest factors. Relying on Kurzke v. Nissan Motor Corp. in USA, 164 N.J.

---

[5] On September 29, 2022, the court also granted summary judgment to defendants in the first Law Division action on all counts, except it denied summary judgment to the extent plaintiff sought a declaration that Vincent was not currently an owner of H&H stock. That order is not at issue in this appeal.

159, 172 (2000), plaintiffs assert the court improperly considered the Pennsylvania courts' advantage in "understanding what goes on in Delaware County, Pennsylvania in regard to civil trial practice" and the complexity of their Dragonetti Act claim. Additionally, they claim the court incorrectly considered the current number of sitting judges in Camden County when determining public interest factor one, administrative difficulties arising in the forum, and failed to adequately consider New Jersey's interest in "protecting its residents from frivolous lawsuits."

Second, plaintiffs contend the court "fail[ed] to appreciate the significance of probative competent evidence and the nexus this matter has with New Jersey." According to plaintiffs, Thomas, Jannette, Vincent and Marie were New Jersey residents "at all relevant times during the Delaware County Action," H&H's corporate activity took place in New Jersey, and many of the depositions, which took place between 2013 and 2016, were conducted in New Jersey. They also maintain Thomas "owned 95% of his interest in H&H through a New Jersey trust," Mark was Vincent's "guardian pursuant to the New Jersey [c]ourt's order," and "Thomas and Jannette continue to reside in New Jersey part-time."

Third, plaintiffs assert dismissal of their complaint was improper because "[d]efendants' motions to dismiss were bereft of any evidence that [d]efendants

15

would have had any difficulty obtaining discovery in New Jersey." They also contend, relying on Kurzke, 164 N.J. at 169-70, D'Agostino v. Johnson & Johnson Inc. (D'Agostino II), 115 N.J. 491, 494 n.1 (1989), and Rippon v. Smigel, 449 N.J. Super. 344, 366 (App. Div. 2017), that the court prematurely engaged in a forum non conveniens analysis before discovery was completed.

Finally, they allege dismissal was improper because defendants "did not present any evidence to show that an alternative forum exists to warrant dismissal of this case." According to plaintiffs, it is therefore "possible that granting the [d]efendants' motions will leave [p]laintiffs without an adequate alternate forum to adjudicate the parties' dispute."

III.

We begin with the applicable standards of review which guide our discussion. An order granting a motion to dismiss for failure to state a claim is reviewed "de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court." Wreden v. Twp. of Lafayette, 436 N.J. Super. 117, 124 (App. Div. 2014). That standard is whether the pleadings even "suggest[]" a basis for the requested relief. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). A reviewing court assesses only the "legal sufficiency" of the claim based on "the facts alleged on the face of the

16

complaint." Green v. Morgan Props., 215 N.J. 431, 451 (2013) (quoting Printing Mart-Morristown, 116 N.J. at 746). The court must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing-Mart Morristown, 116 N.J. at 746 (quoting Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). The facts as pled are considered "true" and accorded "all legitimate inferences." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 166 (2005).

On the other hand, "[t]he doctrine [of forum non conveniens] is equitable in nature and, therefore, decisions concerning its application ordinarily are left to the sound discretion of the trial court. . . . '[We] should not substitute [our] judgment for that of the trial judge unless there is a showing of clear abuse of that discretion.'" Kurzke, 164 N.J. at 165 (quoting Civic S. Factors Corp. v. Bonat, 65 N.J. 329, 333 (1974)). A trial court abuses its discretion when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Lipsky v. N.J. Ass'n of Health Plans, Inc., 474 N.J. Super. 447, 463-64 (App. Div. 2023) (quoting Wear v. Selective Ins. Co., 455 N.J. Super. 440, 459 (App. Div. 2018)).

Forum non conveniens is an equitable doctrine which "empowers a court to decline to exercise jurisdiction when a trial in another available jurisdiction 'will best serve the convenience of the parties and the ends of justice.'" Yousef v. Gen. Dynamics Corp., 205 N.J. 543, 557 (2011) (quoting Gore v. U.S. Steel Corp., 15 N.J. 301, 305 (1954)). "Ordinarily, a plaintiff's choice of forum will be honored by a court [with] jurisdiction over a case." Ibid. However, "a court using its equitable power can decline to exercise jurisdiction over a defendant if that defendant can demonstrate that the plaintiff's choice of forum is 'demonstrably inappropriate.'" Id. at 548 (quoting Kurzke, 164 N.J. at 171-72).

"First, . . . the plaintiff's choice of forum is entitled to preferential consideration by the court." Id. at 557. "[T]here is a strong presumption in favor of retaining jurisdiction where the plaintiff is a resident who has chosen [their] home forum." Kurzke, 164 N.J. at 171 (quoting D'Agostino I, 225 N.J. Super. at 262). "A nonresident's choice of forum[, however,] is entitled to substantially less deference." Ibid. (quoting D'Agostino I, 225 N.J. Super. at 262). Regardless, "a plaintiff's choice of forum is not dispositive . . . because ultimately it is for the court to decide whether the ends of justice will be furthered by trying a case in one forum or another." Yousef, 205 N.J. at 557 (citations omitted).

18                                                              A-2913-21

Second, to dismiss a complaint based on forum non conveniens, there must be an adequate alternative forum for the case where the defendants are amenable to service of process and the subject matter of the dispute may be litigated. Varo v. Owens-Illinois, Inc., 400 N.J. Super. 508, 520 (App. Div. 2008). "An alternative forum will be deemed inadequate if 'the remedy offered by the other forum is clearly unsatisfactory.'" Yousef, 205 N.J. at 557 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981)). The Third Circuit has held a forum is inadequate "[w]here a plaintiff cannot access evidence essential to prove a claim," Eurofins Pharma US Holdings v BioAlliance Pharma SA, 623 F.3d 147, 161 n.14 (3d Cir. 2010), and where systemic backlog issues would result in "delays of up to a quarter of a century" in a matter involving a minor child, Bhatnagar by Bhatnagar v. Surrendra Overseas, 52 F.3d 1220, 1228 (3d Cir. 1995).

If an adequate alternative forum exists, the court next must consider and weigh both public and private interest factors set forth in Gulf Oil Corp., 330 U.S. at 508-09, to determine whether the plaintiff's choice of forum is appropriate for the matters at issue. Kurzke, 164 N.J. at 165-66. In doing so, the "test 'should be practicable as well as inherently just,'" D'Agostino I, 225 N.J. Super. at 261 (quoting Starr v. Berry, 25 N.J. 573, 587 (1958)), and should

"avoid a rigid formula," id. at 262. "The value ascribed to any particular factor may vary depending on the circumstances of each case." Yousef, 205 N.J. at 558. Further, "[a]nalysis of the issue is qualitative, not quantitative." Varo, 400 N.J. Super. at 524.

The public interest factors are as follows:

> (1) the administrative difficulties which follow from having litigation "pile up in congested centers" rather than being handled at its origin, (2) the imposition of jury duty on members of a community having no relation to the litigation, (3) the local interest in the subject matter such that affected members of the community may wish to view the trial[,] and (4) the local interest "in having localized controversies decided at home."
>
> [Aguerre v. Schering-Plough Corp., 393 N.J. Super. 459, 474 (App. Div. 2007) (quoting D'Agostino I, 225 N.J. Super. at 263).]

The private interest factors are:

> (1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, (3) whether a view of the premises is appropriate to the action[,] and (4) all other practical problems that make trial of the case "easy, expeditious and inexpensive," including the enforceability of the ultimate judgment.
>
> [Ibid. (quoting D'Agostino I, 225 N.J. Super. at 263).]

20

Here, we are convinced the court did not abuse its discretion in finding an adequate alternative forum available for this action or in weighing the public and private interest factors. First, we reject plaintiffs' claim that their choice of forum should be given special deference based on their alleged status as New Jersey residents as belied by their own complaint. As noted, in their May 2021 complaint, plaintiffs alleged, at the time of filing, Thomas and Jannette were Florida citizens residing in New Jersey part-time, while Mark and Vincent were Florida citizens, each of the attorneys were Pennsylvania attorneys at Pennsylvania firms, and H&H was a Pennsylvania corporation. Even if we afforded plaintiffs the "strong presumption in favor of retaining jurisdiction where the plaintiff is a resident who has chosen [their] home forum," Kurzke, 164 N.J. at 171 (quoting D'Agostino I, 225 N.J. Super. at 262), we are convinced the court did not err in determining it would be demonstrably inappropriate for a New Jersey court to adjudicate claims alleging "the misuse of the Pennsylvania court system."

Further, plaintiffs' argument that no adequate alternative forum exists is wholly undermined by their filing a complaint in Pennsylvania alleging the same causes of action against the same defendants. As noted, all defendants accepted service in that action. See Varo, 400 N.J. Super. at 520. Additionally, plaintiffs

have not demonstrated before us how the remedies available to them in Pennsylvania would be unsatisfactory. See Yousef, 205 N.J. at 557.

Further, the court's findings with respect to the public and private interest factors were amply supported by substantial credible evidence in the record. Specifically, the court's balancing analysis was animated largely by its finding on public interest factor four, that this case is not a "localized controvers[y]" in New Jersey, see D'Agostino I, 225 N.J. Super. at 263, but rather a dispute about misuse of the Pennsylvania court system. We agree with defendants and the court that the factors weigh heavily in favor of dismissal.

We also are not persuaded by plaintiffs' claim that the trial court improperly considered difficulties arising from the New Jersey court's lack of familiarity with Pennsylvania civil procedure and practice. We do not doubt, as plaintiffs argue, New Jersey courts are capable of understanding and applying Pennsylvania law. As Fioravanti's counsel noted, however, additional briefing or argument on matters specific to Pennsylvania, which would be unnecessary before a Pennsylvania court, would likely increase the cost of litigation. Private interest factor four contemplates "all other practical problems that make trial of the case 'easy, expeditious and inexpensive.'" Aguerre, 393 N.J. Super. at 474 (emphasis added) (quoting D'Agostino I, 225 N.J. Super. at 263). Further, as

22

the United States Supreme Court stated in Gulf Oil Corp., public interest factors weigh toward dismissal where the court must "untangle problems in conflict of laws, and in law foreign to itself." 330 U.S. at 509.

We find plaintiffs' contention the court improperly considered the number of available judges in Camden County similarly unavailing. In Yousef, our Supreme Court characterized public interest factor one as "consideration of trial delays that may occur because of backlogs in a jurisdiction." 205 N.J. at 558. While we noted in D'Agostino I "it would be grossly unfair to dismiss cases having evidential roots in New Jersey simply on the basis of our crowded civil court dockets," 225 N.J. Super. at 265, this was not the sole basis for the court's application of forum non conveniens here. It was simply one factor the court considered which weighed in favor of dismissal.

Most importantly, we agree with defendants and the court the "type of factual nexus that would [ordinarily] induce a court to retain jurisdiction . . . manifested by a significant relationship between the issues in the case and the jurisdiction," Varo, 400 N.J. Super. at 527 (quoting D'Agostino II, 115 N.J. at 495), is simply not demonstrated by the record. Although plaintiffs contend certain actions giving rise to the Delaware County litigation and relevant to certain counts in the May 2021 complaint took place in New Jersey, they

conceded in their motion to amend, consolidation application, and brief before us that, primarily, defendants' alleged behavior in the Delaware County action gave rise to their causes of action here.

For example, plaintiffs rely on the fact that certain board meetings took place in New Jersey, but argued in their motion to amend that falsified minutes from those meetings were "used as a basis for the Davis Bucco representation of H&H in the effort to unlawfully wrest control and ownership of H&H from Thomas." Further, many of the assertions in the complaint directly rely upon the Delaware County court's factual findings. In addition, certain defendants, particularly Fioravanti and Flandreau, have no connection to New Jersey. Indeed, they became involved with the parties only through their representation of Marie in the Delaware County action.

Similarly, we reject plaintiffs' arguments on public interest factors two and four that New Jersey and local jurors "have a significant interest in adjudicating whether one New Jersey resident misused the Pennsylvania court system against another New Jersey resident." Before us, Mark notes he has lived in Florida since 1975 and Vincent moved to Florida in 2016. Further, as noted, H&H as well as each of the attorney and firm defendants are based in Pennsylvania and events in Pennsylvania primarily gave rise to plaintiffs' causes

of action.  Thus, the court correctly determined this matter is not a "localized controversy" and "New Jersey citizens have no particular interest in adjudicating whether or not the Pennsylvania court system was appropriately used."

Finally, we do not read our case law, as plaintiffs suggest, to require defendants establish difficulty in obtaining discovery in New Jersey as a prerequisite to seeking relief based on forum non conveniens, or that it was inappropriate to dismiss the complaint before discovery could be completed. With that said, we agree with plaintiffs there appears to be no unreasonable difficulty in obtaining discovery, particularly where the two jurisdictions at issue are close geographically.  However, this factor simply does not outweigh the fact, as the court found, that the essential legal and factual nexus of this matter is Pennsylvania-based.

In Kurzke, our Supreme Court "address[ed] the timing" of a motion to dismiss based on forum non conveniens and concluded a motion to dismiss on those grounds "should not be heard unless the movant has made a good faith effort to obtain discovery and can provide the court with a record verifying that discovery is unreasonably inadequate for litigating in the forum chosen by the plaintiff."  164 N.J. at 168.  "Mere speculation about potential inadequacies ordinarily is not a sufficient basis to deny the plaintiff the choice of forum."

25

Ibid. In that case, the Court determined "the lack of discovery ma[de] any balancing inconclusive and premature." Id. at 169.

Similarly, in D'Agostino II, the Court explained "a trial court's disposition of a forum non conveniens motion would be enhanced in such cases if decision were reserved until discovery has proceeded sufficiently to enable the court to make a better-informed assessment of the private- and public-interest factors." 115 N.J. at 494 n.1. In that matter, "the record before the trial court was 'sparse'" because there had been no discovery. Ibid. And, in Rippon, we observed "that permitting the parties to engage in a period of discovery prior to considering their motions would have assisted the trial court in reviewing defendants' assertion that plaintiff's complaint should be dismissed on grounds of forum non conveniens." 449 N.J. Super. at 364.

The record does not support the conclusion defendants' motion to dismiss based on forum non conveniens was premature or that the parties would have benefitted from a greater opportunity to engage in discovery. Plaintiffs have not explained how additional discovery is necessary to supplement the discovery obtained in the previous actions, which related to the same events at issue in this litigation. As noted, the parties have been engaged in litigation in various forums since 2013. The record before us is far from sparse and the court's

<span>A-2913-21</span>

decision was not based on "[m]ere speculation about potential inadequacies." Kurzke, 164 N.J. at 168. Rather, the record before the motion court was clearly sufficient to enable it to make a well-informed "assessment of the private- and public-interest factors," D'Agostino II, 115 N.J. at 494 n.1.

IV.

Next, plaintiffs assert the court erred in finding nine of their claims were barred by the statute of limitations. They argue the court "misapplied the government interest standard when it determined that Pennsylvania's, and not New Jersey's, statute of limitations applied," specifically contending the court failed to assess "the policies underlying each state's laws and the statute of limitations and the government interest served in their application." On this point, plaintiffs again note New Jersey maintained an interest "where one New Jersey resident . . . forg[ed] documentation in an attempt to unlawfully steal the property owned by another New Jersey resident."

They similarly maintain "New Jersey has a strong interest in affording its citizens the ability to recover or secure the property." Further, according to plaintiffs, the parties were New Jersey residents during the events underlying the Delaware County action and "the counts to which the statute of limitations were applied by the trial court did not involve the administration of the

underlying Delaware County Action in Pennsylvania; rather, they were derived from conduct substantially related to New Jersey." We conclude the court's governmental interest analysis used to apply Pennsylvania's statute of limitations was erroneous and the correct analysis is set forth in section 142 of the Restatement (Second) of Conflict of Laws, as directed by McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 574 (2017).

"When a civil action is brought in New Jersey, our courts apply New Jersey's choice-of-law rules in deciding whether this State's or another state's statute of limitations governs the matter." Id. at 583. "The analytical framework for deciding how to resolve a choice-of-law issue is a matter of law." Id. at 584. "The first inquiry in any choice-of-law analysis is whether the laws of the states with interests in the litigation are in conflict." Ibid. "[W]hen a complaint is timely filed within one state's statute of limitations but is filed outside another state's, then a true conflict is present." Ibid.

The analysis our courts use to resolve choice-of-law issues has changed over time. In P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 139 (2008), the Court noted it had "embrac[ed] the modern governmental interest analysis" in 1967. However, in Camp Jaycee, the Court "formally adopted the Second Restatement's most-significant-relationship test . . . for deciding the choice of

substantive law in tort cases involving more than one state." McCarrell, 277 N.J. at 589 (emphasis in original). Camp Jaycee did not specifically adopt the Second Restatement to resolve choice-of-law conflicts regarding statutes of limitations. Id. at 591.

In McCarrell, the Court held "section 142 of the Second Restatement is now the operative choice-of-law rule for resolving statute-of-limitations conflicts because it will channel judicial discretion and lead to more predictable and uniform results that are consistent with the just expectations of the parties." Id. at 574. Section 142 provides:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6. In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) The forum will apply its own statute of limitations barring the claim.
>
> (2) The forum will apply its own statute of limitations permitting the claim unless:
>
> (a) maintenance of the claim would serve no substantial interest of the forum; and
>
> (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

> [Restatement (Second) of Conflicts of Law § 142
> (1988).]

The Supreme Court explained "[u]nder section 142(2)(a), the statute of limitations of the forum state generally applies whenever that state has a substantial interest in the maintenance of the claim." McCarrell, 227 N.J. at 593. Accordingly, "[i]n that circumstance, the inquiry ends for statute-of-limitations purposes, unless exceptional circumstances would render that result unreasonable" and "[o]nly when the forum state has 'no substantial interest' in the maintenance of the claim does a court consider section 142(2)(b)." Ibid.

The parties do not dispute that a conflict exists between New Jersey's and Pennsylvania's statutes of limitations. Pennsylvania's limitations period with respect to all but one of plaintiffs' claims[6] is two years while New Jersey's is six. See 42 Pa. Cons. Stat. § 5524; N.J.S.A. 2A:14-1. Here, the court erred in applying the governmental interest analysis to resolve the conflict instead of the Second Restatement test.

---

[6] Plaintiffs allege claims for breach of fiduciary duty, fraud/fraudulent misrepresentation, conversion, replevin/declaratory judgment, civil conspiracy, corporate waste, unjust enrichment, tortious interference with contract, abuse of process, and a violation of the Dragonetti act. Although not raised by either party below or before us, it appears Pennsylvania's statute of limitations for unjust enrichment actions is four years. See 42 Pa. Cons. Stat. § 5525(a)(4).

While our review of application of a statute of limitations period to bar a cause of action is de novo, see Save Camden Pub. Schs. v. Camden City Bd. of Educ., 454 N.J. Super. 478, 487 (App. Div. 2018), in light of our decision to affirm the court's forum non conveniens dismissal in conjunction with plaintiffs' subsequent filing in Pennsylvania, we believe the proper course is for a Pennsylvania court, applying its own choice-of-law rules, to resolve the issue. Indeed, "[a] forum non conveniens dismissal . . . is a determination that the merits should be adjudicated elsewhere." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 432 (2007). Accordingly, we vacate the portion of the court's order dismissing claims one through eight and ten with prejudice based on the statute of limitations. The parties, of course, can renew their applications in the Pennsylvania courts, as appropriate.

To the extent we have not addressed any arguments raised by either party, after considering these arguments against the record and applicable law, we conclude they lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E).

In sum, we affirm the portion of the court's April 12, 2022 order dismissing plaintiff's complaint without prejudice based on forum non

conveniens.  We vacate the portion of that order dismissing counts one through eight and ten with prejudice based on the statute of limitations.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2913-21